ZUGALLA v. INTERNATIONAL MERCANTILE AGENCY.

(Circuit Court of Appeals, Third Circuit. January 16, 1906.)

1. BANKRUPTCY—WHO MAY BE ADJUDGED BANKRUPT—CORPORATIONS—MERCANTILE PURSUITS.

The term "mercantile pursuits" in Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], making corporations principally engaged in such pursuits subject to the act, is to be given its common and generally understood meaning, and includes only corporations engaged in the buying and selling of commodities.

[Ed. Note.—What persons are subject to bankruptcy law, see note to In re Taylor, 42 C. C. A. 4.]

2. SAME—CORPORATION ENGAGED PRINCIPALLY IN PUBLISHING.

An incorporated mercantile agency whose business is to rate and report the credit seekers of the United States and Canada, to publish these ratings in the form of a book, and to furnish such book and also special reports at a special price per hundred to all mercantile agency users in this country and Canada, is not engaged principally in publishing or in mercantile pursuits, within the meaning of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], and cannot be adjudged an involuntary bankrupt thereunder.

3. SAME—ACT OF BANKRUPTCY—APPOINTMENT OF RECEIVER.

The General Incorporation Act of New Jersey, §§ 65, 66 (P. L. 1896, p. 298), provide that on a bill filed by a creditor or stockholder of a corporation charging its insolvency, the Court of Chancery, "being satisfied by affidavit or otherwise * * * of the truth of the allegations" and upon such notice as the court may direct, may grant an injunction and at the same time or at any time afterward may appoint a receiver. *Held,* that such statute contemplates and requires a judicial determination of insolvency before the appointment of a receiver thereunder, and that the appointment of a temporary receiver ex parte on the filing of the bill, and at the time notice was directed to be served on the corporation, was not made under the statute, but under the general equity powers of the court, and did not constitute the appointing of a receiver under the laws of the state because of insolvency within the meaning of Bankr. Act

July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683], which makes such an appointment an act of bankruptcy.

Appeal from the District Court of the United States for the District of New Jersey.

Martin Conboy, for appellant.

C. E. Morgan, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal under section 25a of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]) from an order of the District Court of the United States for the district of New Jersey, adjudging the International Mercantile Agency a bankrupt.

The petition of creditors, upon which the adjudication of bankruptcy was made, was filed August 27, 1904, and stated, inter alia, that the International Mercantile Agency was a mercantile corporation under the laws of the state of New Jersey, "engaged in the business of printing and publishing, and furnishing, selling, distributing and otherwise disposing of mercantile writings and other information in bound volumes and otherwise"; that it was wholly insolvent, and that within four months next preceding the date of the petition, the said International Mercantile Agency had committed an act of bankruptcy, in that, theretofore, to wit, on the 25th day of August, 1904, one George R. Beach, of Jersey City, N. J., had been duly appointed receiver of said corporation, by the Court of Chancery of the said state of New Jersey, on the ground of the insolvency of said corporation. The appellant, as a creditor of the said International Mercantile Agency, on September 16, 1904, filed its answer to the said petition, in which he admits that the International Mercantile Agency was a corporation duly organized under the laws of the state of New Jersey, but denies that it was at the time of the filing of the petition, "engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits," or principally engaged in either or any of them, and alleges that the court below had no jurisdiction to adjudge said corporation bankrupt, and has no jurisdiction of said corporation under the bankrupt law. He also denies that the said corporation has committed an act of bankruptcy, as alleged in the petition, or that it is insolvent. Afterwards, on the 10th day of October, 1904, the court of bankruptcy, on consent of counsel for the petitioning and answering creditors, ordered that the issues raised by the petition, and answers filed therein, be referred to a special master, to take testimony therein and report the same to the court, with his recommendations thereon. The issues raised by the pleadings, and referred to the special master, were, as stated by him:

(1) Whether the three persons who filed the petition were creditors of the International Mercantile Agency.

(2) Whether the International Mercantile Agency was such a corporation, that it could be declared a bankrupt under the provisions

of section 4b of the bankrupt act (30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]).

(3) Whether the act of bankruptcy was committed before the filing of the petition.

(4) Whether the International Mercantile Agency was, at the time of the filing of the petition, insolvent.

It was admitted of record, that the persons who filed the petition were creditors of the International Mercantile Agency. As to the other three issues, the special master, after hearing the testimony and the argument of counsel, in an elaborate and interesting opinion has found, as to the second issue, that the International Mercantile Agency is such a corporation as comes within the jurisdiction of the courts of bankruptcy, by virtue of section 4b of the bankruptcy act, and, as to the third and fourth issues, that the said corporation was insolvent and had committed an act of bankruptcy, in that a receiver or trustee had been put in charge of its property, because of insolvency, under the laws of the state of New Jersey. The court of bankruptcy, adopting the recommendation of its special master, adjudged the said corporation a bankrupt. The questions, therefore, presented by this appeal are the same as those presented to and passed upon by the special master, and confirmed by the court, viz., (1) whether the International Mercantile Agency was such a corporation that it could be declared a bankrupt within the provisions of section 4b of the bankrupt act; and (2) whether the appointment by the Court of Chancery of the state of New Jersey, on the 25th day of August, 1904, of a receiver of said corporation, as alleged in said petition, was an act of bankruptcy under section 3a (4), as amended by the act of 1903 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683]).

First, then, was the International Mercantile Agency such a corporation as is made subject to involuntary bankruptcy by section 4b of the bankrupt act? This provision of the statute reads as follows:

"b. Any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act."

Though the special master inclined to the opinion that a mercantile agency was principally engaged in mercantile pursuits, the contention was not seriously made at the argument. It suffices to say that such a corporation is not engaged in buying and selling commodities, or in so dealing with them as to constitute a mercantile business, within the common acceptation of those words. The special master quotes the Century Dictionary's definition of "mercantile," as "having to do with trade or commerce," and then says: "Mercantile agencies have grown to be an indispensable adjunct of trade and commerce, and appertain particularly to the ordinary business of merchants." This is, indeed, a forced construction, which, if adopted, would lead to

much confusion in the administration of the bankrupt law. "Mercantile" is an adjective, and one of its shades of meaning may be the one quoted, but, when qualifying or defining the business of a person, natural or artificial, it connotes the buying and selling of commodities. Such is the basic definition of the dictionaries, as well as its meaning in common speech.

There is more difficulty, however, in determining the question, whether such a mercantile agency was principally engaged in publishing, within the meaning of the provision of the bankrupt act, above quoted. After citing a great number of cases, in which various corporations had been decided to be within or not within the meaning of the act in this regard, the learned special master pertinently observes, that:

"It will be seen that these cases are many of them conflicting, and no definite fixed rule can readily be adduced from them. Each case must be decided in accordance with the particular facts of that case."

The vice president of the International Mercantile Agency, a witness produced on the part of the petitioning creditors, testifies as to the nature of the business of the International Mercantile Agency, as follows:

"Its business was to rate and report the credit seekers of the United States and Canada, and to publish these ratings in the form of a book, and to furnish both it and special reports at a special price per hundred, to all mercantile agency users in this country and Canada."

This agrees with the general understanding as to the business of such agencies. Bouvier's Law Dictionary defines a commercial agency as:

"A person, firm, or corporation engaged in the business of collecting information as to the financial standing, ability and credit of persons engaged in business, and reporting the same to subscribers or customers applying and paying therefor."

The arbitrary distinctions made by the act, between the classes of corporations subject to involuntary bankruptcy, would seem to require, that the words descriptive of these classes must be taken in their common and ordinary meaning, and that nothing is to be included in such meaning by intendment or implication. That the courts have considered the manifest intention of Congress to be "to restrict the operation of this law in respect of its application to involuntary proceedings against corporations," is well shown by the decision of the Circuit Court of Appeals for the Sixth Circuit, in U. S. Hotel Co. v. Niles, 134 Fed. 225, 67 C. C. A. 153, and, in order that mining corporations should be included within the classification of such corporations, Congress has thought it necessary, by a recent amendment, to insert by name that class of corporations.

Does the description of the business of the International Mercantile Agency, as given in this record, bring it within the common and ordinary meaning of a corporation "principally engaged in publishing"? Dictionary meanings of the word "publishing," do not help us to decide this question. What is connoted to the ordinary mind, is the business of publishing, as prosecuted by those professedly engaged therein, by those who are ordinarily called "publishers," i. e.,

manufacturers and distributers of books, pamphlets, etc.  But not only must the corporation, subject to proceedings in involuntary bankruptcy, be engaged in publishing, as thus commonly understood, but it must be principally engaged therein.  Its principal business must be publishing, and not a minor object incidental to some greater and more general purpose.  The principal and general purpose of one principally engaged in publishing, is the manufacturing and issuing from the press, and putting upon the market for sale, books and pamphlets, as such; not the collecting and arranging and tabulating the contents of such books.  The principal business of a mercantile agency, as above described, was to rate and report the credit seekers of the United States and Canada, to publish those ratings in the form of a book, and to furnish both it and special reports at a special price per hundred, to all mercantile agency users in this country and Canada.  This was a special business, to which the printing and publishing of a book was an incident, and would seem a very different business from that of publishing, as commonly understood and above described.  No one would think of calling one engaged in such business a "publisher," and expect to convey thereby, to the common understanding, a sufficient notion of his business.

In support of his opinion, that a mercantile agency, carrying on a business similar to that carried on by the International Mercantile Agency, was engaged in a publishing business, the learned master cites several cases, which, on examination, turn out to be cases in which such agencies were held responsible, as for libel, for reports made to their customers, falsely and injuriously affecting the credit of the plaintiffs.  Decisions holding that the communication of these reports by such agencies to their customers was a sufficient publication to support a charge of libel, surely have no application to the question with which we are here concerned, viz., was the corporation petitioned against, a corporation principally engaged in the business of publishing, in the common and ordinary acceptation of those words?  The only case directly in point, cited by the special master, is that of In re Mutual Mercantile Agency (D. C.) 111 Fed. 152.  The corporation in that case was incorporated, not only to conduct a general mercantile agency, but its charter authorized it to do many other things, among them, "to acquire by purchase or otherwise, and to establish, maintain and conduct a general printing, publishing, bookbinding and advertising business."  The testimony given, however, tended to show that the business of the company was gathering information and printing and publishing a book of ratings, with respect to the standing of merchants in the United States and elsewhere.  After so stating, the learned district judge says:

"No testimony was offered on behalf of the objecting creditors.  At the close of the case, a motion was made to dismiss the petition upon its allegations and the evidence.  The corporation seems to be one falling within the description of section 4b of the act."

The question does not seem to have been argued by counsel, and we have quoted all that was said by the court in regard thereto.  To this decision, apparently, little weight is accorded by the special master, who has fairly set out the case in his report.

For the reasons stated, we think that the International Mercantile Agency was not engaged "principally in publishing," within the meaning of section 4b of the bankrupt act.

But we rest our decision also upon another ground, and that is, that the so-called appointment of a receiver of the International Mercantile Agency, by the Court of Chancery of the state of New Jersey, alleged by the petitioning creditors as the act of bankruptcy upon which their proceeding was founded, was not an act of bankruptcy, within the meaning of section 3a (4) of the bankrupt act. By section 3a, it is enacted that:

"Acts of bankruptcy by a person shall consist of his having * * * (4) made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property, or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States."

Prior to 1903, clause 4 of section 3 was confined to the words "made a general assignment for the benefit of his creditors," and the appointment of a receiver of the property of an insolvent, whether an individual or a corporation, was not of itself an act of bankruptcy, and this was so, "whether the appointment was made upon the application of the insolvent or upon the application of creditors." In re Spalding (C. C. A.) 139 Fed. 245. The courts having held that the procurement by an insolvent of the appointment of a receiver of his property, by a state court, was not equivalent to a general assignment for the benefit of creditors, Congress, in 1903, amended the act, so that paragraph 4 of section 3 should read as quoted above. By this amendment, an additional act of bankrupcty is declared to have been committed, whenever a receiver or trustee has been put in charge of the property of a person, because of his insolvency under the laws of a state. In the case before us, the petition, as we have seen, avers that such an act of bankruptcy had been committed by the respondent corporation. The facts upon which it relies for this averment, are as follows:

Section 65 of the general incorporation act of the state of New Jersey (P. L. 1896, p. 298) provides that:

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, any creditor or stockholder may by petition or bill of complaint setting forth the facts and circumstances of the case apply to the Court of Chancery for a writ of injunction and the appointment of a receiver or receivers or trustees, and the court being satisfied by affidavit or otherwise of the sufficiency of said application, and of the truth of the allegations contained in the petition or bill, and upon such notice, if any, as the court by order may direct, may proceed in a summary way to hear the affidavits, proofs and allegations which may be offered on behalf of the parties, and if upon such inquiry it shall appear to the court that the corporation has become insolvent and is not about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders, it may issue an injunction to restrain the corporation and its officers and ágents from exercising any of its privileges or franchises and from collecting or receiving any debts, or paying out, selling, assigning or transferring any of its estate, moneys, funds, lands, tenements or effects, except to a receiver appointed by the court, until the court shall otherwise order."

Section 66 provides that the court, "at the time of ordering said injunction, or at any time afterwards, may appoint a receiver or trustee, for the creditors and stockholders of the corporation, with full power and authority," to do all that receivers ordinarily are empowered to do, to take possession of the property, sue for and collect outstanding debts, sell and dispose of all the property of the defendant, and to hold and dispose of the proceeds under the direction of the Court of Chancery. The power and authority of such receiver is of such scope, that it is spoken of by Vice Chancellor Van Fleet, in the case of the Atlantic Trust Co. v. Consolidated Electric Storage Co., 49 N. J. Eq. 402, 23 Atl. 934, as a statutory power to dissolve an insolvent corporation and wind it up. "This power formed no part of the original jurisdiction of the court. It was conferred by statute. * * * The exercise of this power to its full extent extinguishes a mere manufacturing or mercantile corporation completely and forever. * * * The statute makes insolvency the jurisdictional fact."

Under the authority of this statute, on the 25th of August, 1904, two days before the filing of the petition in bankruptcy, a stockholder of the International Mercantile Agency, exhibited to one of the vice chancellors of New Jersey his bill in chancery against that corporation, praying that an injunction might issue against it, restraining it from exercising any of its franchises or privileges, that it might be decreed to be insolvent, and a receiver be appointed, pursuant to the form of the statute in such case made and provided. The jurisdictional allegations of the bill are made in the words of the statute, as follows:

"Ninth. Your orator further shows and charges the fact to be that such corporation is insolvent, and has suspended its ordinary business for the want of funds to carry on the same; and that said corporation is not able to resume its business in a short time or at any time with safety to the public and advantage to its stockholders."

It will be observed that the New Jersey statute, under which this proceeding was begun, authorizes the issue of an injunction only after the court has, upon due notice, instituted an inquiry and heard proofs and allegations to satisfy itself "that the corporation has become insolvent and is not about to resume its business in a short time," etc. It is also to be observed that under this statute, receivers can be appointed only at the time of the issuing of the injunction, or at sometime thereafter. It follows, therefore, that the receivers, with the drastic powers and authority conferred by the statute, can only be appointed after a judicial determination of the insolvency of the corporation. On the same day that the bill was filed, August 25, 1904, the Vice Chancellor made an order, as follows:

"It being charged by the bill of complaint and affidavit and exhibits annexed thereto in above cause that the defendant corporation is insolvent, and that its effects at its home office have been seized in attachment and are now in possession of the sheriff of the county of New York in the state of New York, and that said corporation has suspended its business and is without credit or funds necessary to resume the same and is not about to resume its business in a short time with safety to the public and advantage to its stockholders, and that unless pending this suit a receiver be appointed the

assets of said corporation, which are widely scattered in many jurisdictions, are likely to be dissipated through legal proceedings in such jurisdictions.

"It is thereupon, on this twenty-fifth day of August, nineteen hundred and four, on motion of Grey, McDermott & Enright, solicitors of complainant, ordered that until the further order of this court said International Mercantile Agency and its officers and agents do desist and refrain from exercising any of its privileges and franchises and from collecting or receiving any debts or paying out, selling, assigning or transferring any of its estate, money, funds, lands, tenements or effects, except to the receiver appointed by this court; and the said corporation and its officers and agents are restrained and enjoined accordingly until the further order of this court herein.

"And it is further ordered that George R. Beach, of Jersey City, New Jersey, be and he hereby is appointed receiver of said International Mercantile Agency, with full power and authority to take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description of said corporation and to hold and keep the same until the further order of this court.

"And it is further ordered that said defendant corporation and its stockholders and creditors show cause before the Chancellor at the Chancery Chambers in the city of Jersey City on Tuesday, the sixth day of September, nineteen hundred and four, at ten o'clock in the forenoon, or as soon thereafter as counsel can be heard, why an injunction should not issue and why a receiver or receivers should not be appointed in accordance with the prayer of said bill, and the statute in such case made and provided, and why the complainant should not have such other and further relief as the court may deem just and proper."

It is manifest that the restraining order and the appointment of a receiver, covered by this order, are not the injunction and appointment of a receiver contemplated by the statute, after a judicial inquiry as to the alleged statutory insolvency of the corporation. The order was evidently made under the general equity powers of the Court of Chancery, and not under statutory authority. It was made, both as a restraining order and as an appointment of a receiver, to preserve in statu quo the property and assets of the corporation, in the custody of an officer of the court, until action could be taken under the statute, and the judicial inquiry contemplated by the statute and provided for in the preliminary order itself, with due notice to all parties in interest, had been completed.

Of interest in this connection, are the remarks of Vice Chancellor Stevenson, in Singer v. Natl. Bedstead Mfg. Co., 65 N. J. Eq. 305, 55 Atl. 868, made a short time after the passage of the amendment of 1903, now under consideration. An order had been made by him, discharging a receiver appointed by the court from his office, in order that his appointment might not conflict with the administration of an estate under the direction of the bankrupt court. In the course of a discussion of the scope and effect of this then recent amendment, the learned Vice Chancellor says:

"There are other questions raised by this peculiar amendment of the bankrupt law which are certainly interesting, although they are not presented by the case now before this court. Some of them are liable, however, to come up at any time. It may be doubted whether the temporary putting in charge of the assets of the debtor because of insolvency constitutes this novel act of bankruptcy, or whether such putting in charge must be permanent. Sometimes, upon filing a bill under our statute against a corporation charging it with insolvency, a receiver is at once appointed of all the assets of the corporation, such appointment being made under the general equity power of the

court. A receiver appointed in this manner prior to the decree for an injunction does not take title under the statute, but is a mere custodian. Is such a receivership an act of bankruptcy on the part of the unfortunate corporation? If so, in case upon the return of the order to show cause a summary investigation results in favor of the defendant corporation, and the order is discharged and the receivership vacated, and the assets ordered delivered back to the corporation, is the act of bankruptcy which consisted in the receivership vacated or atoned for in any way? After the temporary receiver in such a case has been put in charge 'because of insolvency,' could any three creditors of the corporation have it adjudged a bankrupt? If so, what would be the effect of an order in the state court vacating the receivership?"

After the parties in interest had had an opportunity to show cause, and the hearing ordered by this preliminary order had been had, a decree was duly entered by the Vice Chancellor, September 6, 1904, whose preamble is as follows:

"It appearing to the court that the order made in above cause on the twenty-fifth day of August, nineteen hundred and four, requiring the defendant corporation to show cause on this date why an injunction should not issue against it as an insolvent corporation and a receiver or receivers be appointed, has been duly served as required by said order, and it appearing in complainant's bill and the affidavit annexed thereto that the said corporation is insolvent and has suspended its ordinary business for want of funds to carry on the same, and is not about to resume its business in a short time with safety to the public and advantage to its stockholders, and the court being satisfied of the sufficiency of the proofs supporting said application, and no sufficient cause being shown to the contrary, it is, on the sixth day of September, nineteen hundred and four, on motion of Grey, McDermott & Enright, solicitors of complainant, ordered, adjudged and decreed that an' injunction issue"

—as prayed for, and the said George R. Beach was appointed receiver for the creditors and stockholders of said corporation, with the full powers and authority described and conferred by the statute of New Jersey. The appointment of a receiver thus made was, in the words of the section of the bankrupt act under consideration, a receiver who had been put in charge of the property of the corporation because of its insolvency, under the laws of a state. To be put in charge, "because of the insolvency" of a corporation, must mean because of judicially determined insolvency. To hold otherwise, would do violence to the settled and orderly procedure of judicial tribunals, and would also lead to absurd consequences not to be unnecessarily invoked. The law requires that the appointment of a receiver, in order to constitute an act of bankruptcy, must be made by reason of the existence of a certain fact, to wit, the insolvency of a corporation. The existence of such a fact must necessarily be determined, either by the admission of the party or by evidence adduced in a judicial inquiry duly had. In the ex parte order made for a temporary receiver, or custodian, on the 25th of August, it is distinctly stated that the same was made because insolvency was charged, not because insolvency existed. The appointment of a receiver, because of insolvency, without which no act of bankruptcy has been committed, had not occurred, and that this is so appears plainly, palpably and unequivocally from the record of the case, in which the order was made. If this were otherwise, the absurd result might well have happened, that after the adjudication of bankruptcy, because of the tem-

porary appointment of a receiver, on August 25th, on the hearing of the rule to show cause on September 6th, the requisite jurisdictional insolvency might not have been shown to the New Jersey chancellor, in consequence of which no receiver could have been appointed under the New Jersey statute.

Under the New Jersey statute, insolvency is a jurisdictional fact, which must be judicially ascertained and determined by the court before it is authorized to appoint a receiver. If insolvency be so alleged in the bill, or accompanying affidavits, as to appeal to the discretion of the chancellor, he will order the summary inquiry prescribed by the act, upon a rule to show cause, or otherwise, of which all parties in interest are duly notified, and determine judicially for himself whether this jurisdictional fact of insolvency exists, or not. If it does not satisfactorily appear to exist, there is no jurisdiction in the court to entertain the suit, and the application must be dismissed. A restraining order for the appointment of a receiver, to preserve the status of the property pendente lite, is an exercise of the general equity power of the chancellor, incidental to the administration of justice, and not the exercise of the authority conferred by the statute. In Atlantic Trust Company v. Consolidated Elec. Storage Co., 49 N. J. Eq. 402, 23 Atl. 934, Vice Chancellor Van Fleet fully sustains these views. In the course of his opinion, he says:

"The power to dissolve an insolvent corporation and wind it up is statutory. It formed no part of the original jurisdiction of the court. It was conferred by a statute passed in 1829, and the language by which it was conferred has remained unchanged from that time to the present. This statute empowers the chancellor, on the application of a creditor or stockholder, alleging that the corporation in which he is interested has become insolvent, to proceed in a summary way to inquire into the truth of such allegations, and if, upon such inquiry, it shall be made to appear that the corporation has become insolvent, and shall not be about to resume its business in a short time, with safety to the public and advantage to the stockholders, he may enjoin it from the further exercise of its franchises, and also from the further transaction of business, and he may also, at the same time, or at any subsequent time during the continuance of the injunction, if, in his judgment, the circumstances of the case and the ends of justice require, appoint a receiver to dispose of its assets and distribute the proceeds. The exercise of this power to its full extent extinguishes a mere manufacturing or mercantile corporation completely and forever. * * * The statute makes insolvency the jurisdictional fact. The court can do nothing—neither issue an injunction nor appoint a receiver—until insolvency is first established. * * *

"If it is necessary that the facts and circumstances showing insolvency must be alleged, it follows necessarily, according to the uniform course of judicial procedure, that if such facts and circumstances are denied, they must be proved before the judicial action asked for can be granted. It is thus made manifest that, both according to the plain letter of the statute and the uniform construction it has received, the power of the court in such cases depends exclusively on the fact of insolvency, and until that fact is clearly established the court can do nothing.

"The proof in support of a jurisdictional fact must always be clear and convincing, for the court derives its power from the fact, and hence, until the fact is shown to exist, it has no power. To doubt such a case is to deny. * * *

"But until insolvency is proved no foundation is laid for the exercise of discretion, and in any case, where the proof fails to establish that fact, clearly and satisfactorily, the court must decline to act for want of jurisdiction."

See also to the same effect, Edison et al. v. Edison United Phonograph Co. et al., 52 N. J. Eq. 620, 29 Atl. 195.

It will also appear from a careful reading of the order of the court, of the 25th of August, that the powers and duties of the receiver therein appointed, differ widely from those of the receiver, provided for in the New Jersey statute. He was not appointed, as required by the statute, a receiver or trustee for the creditors and stockholders. There was no power to dispose of or sell the property or assets committed to his charge, or any duty as to distribution of the same, or of winding up the affairs of the said corporation. His sole duty was to collect and keep in custody the property and assets of the corporation until the further order of the court. Nor does the restraining order purport to be the injunction prayed for in the bill. On the other hand, the powers and duties conferred by the statute on the receiver, authorized by it to be appointed, were precisely those conferred upon the receiver, as appointed by the decree of September 6, 1904, after the adjudication of insolvency. These powers were full and plenary, and extended to the sale and disposition of the whole property of the corporation of every kind, real or personal, and to the distribution thereof, and the winding up and extinction of the corporation itself.

We are of opinion that the appointment of a receiver, on August 25, 1904, by the Court of Chancery of the state of New Jersey, was not an act of bankruptcy, as alleged in the petition for involuntary bankruptcy, within the meaning of section 3a (4) of the bankrupt law.

The judgment of the court below is reversed.