In re BOSTON & OAXACA MINING CO.

(District Court, D. Mass.  May 14, 1909.)

No. 14,609.

BANKRUPTCY (§ 60*)—"ACT OF BANKRUPTCY"—APPOINTMENT OF RECEIVER FOR CORPORATION.

The appointment of a receiver for a corporation by a court of equity at suit of minority stockholders who alleged fraud and mismanagement by the majority and prayed for the appointment of a receiver pendente lite to conduct the business, but did not ask for a winding up of its affairs, held not to constitute an act of bankruptcy by the corporation within Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1309) ; it not appearing that the appointment was made "because of insolvency."

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

In the matter of the Boston & Oaxaca Mining Company, alleged bankrupt.  On question of adjudication.  Petition dismissed.

Arthur P. Teele, for petitioning creditors.

Whipple, Sears & Ogden, for objecting creditors.

DODGE, District Judge.  The referee finds that the alleged bankrupt had its principal place of business in Boston, and I do not find sufficient ground in the evidence for disagreeing with this conclusion. The court, therefore, has jurisdiction.

The act of bankruptcy alleged is that on January 8, 1909, "one Cassius C. Bennett, of Pierre, S. D., was appointed receiver of said Boston & Oaxaca Mining Company because of insolvency by the circuit court, county of Hughes, state of South Dakota, and also by the superior court, county of Suffolk, in the commonwealth of Massachusetts, on February 4, 1909."  Taking this allegation that a receiver was "appointed" on the dates referred to, to be equivalent to an allegation that a receiver "has been put in charge of" the alleged bankrupt's "property," the act of bankruptcy charged is that described in section 3a (4) of the bankruptcy act.  There is no dispute that the South Dakota court referred to did by decree entered January 8, 1909, put Mr. Bennett in charge of the respondent's property as receiver, nor that the Massachusetts court referred to did, by decree entered February 4, 1909, make him ancillary receiver of the respondent's property in Massachusetts.  The question to be decided here is:  Were these receiverships established because of the company's insolvency?

The company's insolvency on the dates referred to is denied.  The referee has made no definite finding upon this precise question.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

He has found:

"That, even according to the present liberal definition of insolvency, this company, owing as it did about $18,000 on January 1, 1909, and having no available funds with which to meet its liabilities, was at the time of the filing of the petition against it on the 18th day of February, 1909, insolvent. As further evidence of this is the fact that the company had voted to issue bonds with which to raise funds to meet its pressing liabilities. In fact, it had owed the former treasurer, Mr. Pierce, $100 for borrowed money for over a year."

But the aggregate of the company's property, though not available on January 1st for the payment of its liabilities, might nevertheless have been, "at a fair valuation, sufficient in amount to pay its debts." Nor, if the company was insolvent in the only sense recognized in the present bankruptcy act at the filing of the petition, does it necessarily follow that the same state of things existed as early as January 8th or February 4th. Assuming, however, that the company was insolvent on both these dates, it still remains to be proved that the action of the South Dakota court or of the Massachusetts court was because of such insolvency. That fact is not established merely by proof that insolvency existed when the court acted.

The decree made by the South Dakota court on January 8, 1909, with the complaint and the plaintiff's affidavits in the case, are in evidence in these proceedings, marked "Exhibit 1." The decree recites that there was no appearance by the defendant, and that the court acted upon the consideration of the plaintiff's evidence only. The grounds whereon the decree was entered do not appear further than as disclosed by the statement in the decree that, having considered the evidence referred to, it appeared to the court "that it is necessary that a receiver pendente lite be appointed for the defendant company."

It is alleged in the complaint, toward the end of paragraph 6, that the company "has no assets sufficient to meet its indebtedness as it accrues." It might be possible to construe this as an allegation of insolvency in the sense of the bankruptcy act. But the language is ambiguous, as it seems to me, particularly in its connection with other allegations in the complaint. The allegations referred to are that ore of the estimated value of $200,000 at the company's mine might, but for the conduct of the majority of the board of directors, be run through the mill and turned into bullion, that the company's present financial condition has been brought about by said majority in order to enable them to convert the company's property to their own use, and that it is well known to said majority that the mine, if properly managed, could within a few months produce a sufficient sum to pay its indebtedness. In none of the affidavits filed with the complaint do I find any statement that the company is insolvent.

What the complaint and affidavits set forth as ground for the relief asked is, in brief, that the majority of the directors now in control are managing the company's affairs with the dishonest purpose of getting rid of the minority interest, and vesting the entire ownership of the mine in themselves. It is to prevent this that the court is asked to appoint a receiver, empower him to take possession of the company's property, and to bring such suits as may be necessary for that purpose. This is all the relief prayed for, except that the concluding prayer is

as usual for such other and further relief as may be just and equitable. No winding up of the company's affairs or distribution of its property is asked for. The appointment of the receiver being, as has been stated, an appointment pendente lite, gives him only such power as would be necessary to enable him to obtain and hold possession for the time being of the company's property.

"If insolvency, either as a distinct ground of proceeding or as coupled with others, was one of the substantial reasons for the appointment of the receiver, the case would come within the reasonable construction of the statute." Beatty v. Andersen Coal Mining Company, 150 Fed. 294, 80 C. C. A. 183. I am unable to believe it proved in this case that insolvency was one of the substantial reasons. Granting the allegation referred to in paragraph 6 of the complaint to have been an allegation of the company's insolvency, there was no admission of the allegation by the defendant, as in the case cited; nor was the scope of the receivership ordered such as would be appropriate to a receivership on the ground of insolvency, as in the same case. I find no reason to suppose that the action of the court upon the complaint and affidavits would have been in any respect different had that allegation been entirely omitted from the complaint.

The application for a receiver to the South Dakota court was not made by the alleged bankrupt, but by three of its stockholders. There is no allegation in the petition, nor would the facts have warranted such an allegation, that it, "being insolvent, applied for a receiver * * * for its property."

If the South Dakota receivership was not because of insolvency, the Massachusetts receivership, which was merely in aid of that established in South Dakota, cannot be said to have been established on that ground.

I am therefore unable to hold that the acts of bankruptcy charged are proved and must order the petition dismissed.