In re WM. S. BUTLER & CO., Inc.

(Circuit Court of Appeals, First Circuit. September 10, 1913.)

Nos. 1,020, 1,021.

1. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY —APPLICATION FOR RECEIVER—
"INSOLVENT."

The definition of the term "insolvent" given in Bankr. Act July 1, 1898, c. 541, § 1, cl. 15, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3419), providing that a person shall be deemed insolvent within the provisions of the act whenever the aggregate of his property shall not at a fair valuation be sufficient in amount to pay his debts, is the one to be applied in determining the meaning of the term in section 3a, cl. 4, as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 ·(U. S. Comp. St. Supp. 1911, p. 1493), providing that an application for a receiver or trustee of his property, by the alleged bankrupt, being insolvent, or when because of insolvency a receiver or trustee has been put in charge of the property under the laws of the state, shall constitute an act of bankruptcy, and hence the appointment of receivers for an alleged bankrupt on the ground that it was unable to meet its obligations as they matured in the ordinary course of business did not constitute an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*

For other definitions, see Words and Phrases, vol. 4, pp. 3647–3655; vol. 8, p. 7689.]

2. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—PROOF—PROCEEDINGS FOR APPOINTMENT OF RECEIVERS.

Where the appointment of receivers for a corporation was claimed as an act of bankruptcy, and the only evidence of the grounds on which they were appointed was the bill, answer, and decree, which bill applied for the appointment on the ground that the corporation was unable to meet its obligations as they matured in the ordinary course of business and did not allege that the corporation's property at a fair valuation was insufficient to pay its debts, and the prayer was granted only to the extent of appointing receivers to assume control of the business and conduct the company's affairs until otherwise ordered by the court, there was no finding of insolvency sufficient to constitute an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

3. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVERS.

Where the appointment of receivers is alleged as an act of bankruptcy, it is not material whether the receivers are temporary or permanent: the important question being whether the decree appointing them is based on the insolvency of the debtor as defined by the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

4. EQUITY (§ 330*)—WAIVER OF OBJECTIONS—SUFFICIENCY OF BILL.

Where, in a bill for the appointment of receivers for a corporation, complainant alleged that it was a citizen and resident of Maine, and that defendant was a citizen and resident of Massachusetts and was indebted to complainant in a sum not less than $25,000, a large part of which was overdue, and though often demanded remained wholly unpaid, defendant, having admitted both allegations by its answer, waived the right to object to any insufficiency in the second allegation for failure to al-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
207 F.—45

lege that the claim had been reduced to judgment and execution issued and returned unsatisfied.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 660–668, 671; Dec. Dig. § 330.*]

**5. JUDGMENT (§ 713*)—DECREE—ACTUAL COMPLAINANT—EQUITABLE RELIEF.**

Where a decree appointing receivers for a corporation determined that the complainant in the bill was the real complainant and a creditor of the corporation entitled to equitable relief, such decree when introduced in a subsequent proceeding, in the absence of proof of fraud in its procurement, was conclusive evidence that the application was made by the complainant in the bill and not by the defendant.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. § 713.*]

**6. CORPORATIONS (§ 397*)—OFFICERS AND AGENTS—AUTHORITY.**

Though a corporation can act only through its officers and agents, their action to bind the corporation must be within the scope of their authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1585, 1586, 1588, 1589, 1596–1601; Dec. Dig. § 397.*]

**7. CORPORATIONS (§ 404*)—GENERAL AGENT—PROPERTY OF CORPORATION—DISPOSAL.**

A general agent, charged with the management of a corporation, is not authorized to dispose of its entire property in a single transaction, in the absence of special authority so to do.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1626–1628, 1633–1639; Dec. Dig. § 404.*]

**8. CORPORATIONS (§ 298*)—DIRECTORS—AUTHORITY—DISPOSITION OF PROPERTY —ACTION—MEETING OF BOARD.**

If the directors of a corporation may authorize a general agent to dispose of all of the corporation's property in a single transaction, such authority can be conferred only at a duly warned meeting of the board or one at which all are present.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1292–1317, 1319; Dec. Dig. § 298.*]

**9. CORPORATIONS (§ 191*)—STOCKHOLDERS—AUTHORITY.**

Stockholders of a corporation can confer authority on the corporation's general agent to dispose of all the corporation's property in a single transaction only by vote of the majority at a corporate meeting duly warned or by unanimous agreement.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 732; Dec. Dig. § 191.*]

**10. BANKRUPTCY (§ 91*)—CORPORATIONS—RECEIVERS.**

Evidence that certain agents of an alleged bankrupt corporation and its counsel undertook to bring about an application for the appointment of receivers by procuring a creditor to file a bill for such relief in its name was insufficient to show that the corporation committed an act of bankruptcy by itself procuring the appointment of such receivers, in the absence of proof that the corporation's directors, while acting as a board, either authorized such action on the part of the corporation's agents and counsel or that the corporation's stockholders with full knowledge ratified such action.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. § 91.*]

Putnam, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

In the matter of bankruptcy proceedings against William S. Butler & Co., Incorporated. From a decree adjudging the corporation a bankrupt, the corporation, its receivers, and certain intervening creditors appeal. Reversed and remanded.

Boyd B. Jones, of Boston, Mass. (Charles F. Choate, Jr., Frederick H. Nash, and William M. Morgan, all of Boston, Mass., on the brief), for appellants.

Lee M. Friedman and Burton E. Eames, both of Boston, Mass. (Tyler, Corneau & Eames, Friedman & Atherton, Jacobs & Jacobs, Warren, Garfield, Whiteside & Lamson, Harvey H. Pratt, and Julius Nelson, all of Boston, Mass., of counsel), for appellees.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is a petition in bankruptcy filed November 9, 1912, in the United States District Court for the District of Massachusetts, by three creditors praying that William S. Butler & Co., Incorporated, be adjudged a bankrupt. The grounds stated in the petition upon which it is claimed that the defendant should be adjudged a bankrupt are the following:

"(1) That said William S. Butler & Co., Incorporated, is insolvent, and that within four months next preceding the date of this petition * * * committed an act of bankruptcy in that it did * * * on the 7th day of November, 1912, because of insolvency, have put in charge of its property two receivers, * * * under the laws of the United States, by virtue of proceedings in equity in the United States District Court for the District of Massachusetts; and

"(2) Committed an act of bankruptcy in that it did * * * on the 7th day of November, 1912, * * * being insolvent, apply to the United States District Court for the District of Massachusetts, sitting in equity, for the appointment of a receiver, by virtue of which proceedings two receivers * * * were appointed."

On the date alleged in the petition, a bill in equity was filed in the District Court for the District of Massachusetts, in which Isaac McLean Sons Company appeared as plaintiff and William S. Butler & Co., Incorporated, as defendant. It was in form a creditors' bill, and after setting out the debt due the plaintiff it alleged in substance:

(1) That the defendant is otherwise indebted to an amount approximating $700,000, a large amount of which is now due.

(2) That the defendant is unable to meet its liabilities as they mature in the ordinary course of business, and that it would be unjust and inequitable for the plaintiff or other creditors to attempt to gain a preference in the time or manner of settlement of their claims.

(3) That the defendant is engaged in the retail dry goods business in Boston; has invested more than $250,000 in stocks of new merchandise which are immediately available for sale at a profit if the business can be carried on without interruption; and that the store occupied by it has recently been refitted with expensive fixtures, which are of great value to a going concern.

(4) That it holds a lease of the premises it occupies, which is of great value, and would be of great value to any purchaser of its business as a going concern, but that if attachments should be placed upon its property, and the defendant should be adjudicated a bankrupt, the value of its lease would be wholly lost.

(5) That the defendant and its predecessors during many years of continuous business have built up a good will of great value which would be almost wholly lost if the business should be closed up.

(6) That, unless a receiver is appointed and empowered to borrow money upon receiver's certificates, the store will have to be closed and its assets sacrificed because of its lack of quick assets and its inability to raise money needed for carrying on its business.

(7) That for these reasons the plaintiff is without adequate remedy for the collection of its indebtedness without the intervention of a court of equity and the appointment of a receiver to continue the business of the defendant and protect the value of its assets until sufficient sums can be realized, either from the continuance of the business or the sale of its assets, to discharge the defendant's indebtedness or to distribute its assets ratably among its creditors.

The bill contained two prayers:

"(1) That receivers be forthwith appointed to take possession of and administer the assets of the defendant with power to manage and operate the property, to continue its business, employ agents and employés, and with the approval of the court to borrow money and issue receiver's certificates therefor; and

"(2) That the debt of the plaintiff and the debts of all other creditors who join in the proceedings be established, and that the assets of the defendant be equitably applied as the court may direct in satisfaction thereof."

On the date of the filing of the bill the defendant answered, admitting that the matters and things stated in the bill were true, and thereupon the following decree was entered:

"On this 7th day of November, 1912, comes the plaintiff in this cause, by its attorney, and upon consideration of the bill of complaint and the answer thereto, and on motion of counsel for the plaintiff, the respondent, by its attorney, consenting thereto, it is ordered, adjudged, and decreed that Charles F. Weed, of Brookline, and Millory H. Gibson, of Boston, both in Massachusetts, be and hereby are appointed receivers of all the assets and property of the respondent, wheresoever situated, and the moneys, contracts, debts, choses in action, books of accounts, deeds, and documents belonging to the respondent or relating to or arising from its property or business; and they are directed to file with the clerk of this court within two days from this date their several bonds, with sureties to be approved by the clerk, in the sum of $50,000 each. Said receivers are hereby authorized and directed to take into their possession forthwith all the assets and property of the respondent wheresoever situated, carrying on the business of the respondent until further order of the court, and for that purpose to purchase such materials and supplies, employ and pay such counsel, servants, and agents, contract for such labor, and, subject to the direction and approval of this court, take such other steps, and enter into such obligations and agreements, as shall be reasonably necessary; to insure any property of the respondent which they may think proper; to collect and receive all sums due or payable to the respondents, or arising from the conduct of its business by the receivers; to pay any accrued rent for the preservation of leases; and under the direction of the court to institute and prosecute all such actions, suits, and proceedings as they may think proper and for the protection and preservation of the respondent's assets or for recovering possession thereof; to defend any and all actions, suits, and proceedings against the respondent or against the receivers in respect of their acts or management as such; and out of the moneys to be received by them, as aforesaid, to pay all taxes and assessments lawfully laid or assessed upon or in respect to the property or business of the respondent, and all expenses and obligations properly incurred by them in carrying on said business, or otherwise in connection with the premises. The said receivers shall deposit all moneys coming into their hands as aforesaid in some suitable bank or trust company in the city of Boston."

The decree also contained an order restraining the respondent, its officers and agents, from interfering with or participating in the management of the·business except through and under the receivers.

In the District Court it was found that the proceeding in equity was brought about by Butler & Co., and that, although the bill was in form a creditor's bill, it was in fact an application by the debtor for the appointment of receivers. It was also found that the debtor was insolvent in fact (that is, in the bankruptcy sense of the term) at the time of the filing of the bill and at the time of the filing of the petition in bankruptcy. The company was adjudged a bankrupt on both the grounds set out in the petition, and the receivers and intervening creditors appealed.

[1] The provisions of the statute under which the alleged acts of bankruptcy are sought to be upheld read as follows:

"Or, being insolvent, applied for a receiver or trustee of his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, or of a territory, or of the United States." Section 3a, cl. 4, of the Act of July 1, 1898, c. 541, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3419), as amended by the Act of February 5, 1903, c. 487, § 2, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1493).

In section 1, cl. 15, of the act, it is provided that:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property * * * shall not, at a fair valuation, be sufficient in amount to pay his debts."

This section undoubtedly sets forth the meaning Congress intended should be given to the words "insolvent" and "insolvency" as used in section 3a, cl. 4, and seems to be the one either directly or impliedly attributed to them by the courts in considering these provisions of the law. In re Golden Malt Cream Co., 164 Fed. 326, 90 C. C. A. 258; Duncan v. Landis, 106 Fed. 839, 45 C. C. A. 666; In re Boston & Oaxaca Mining Co. (D. C.) 181 Fed. 422; In re Perry Aldrich Co. (D. C.) 165 Fed. 249; Beatty v. Andersen Coal Mining Co., 150 Fed. 293, 80 C. C. A. 181; Hooks v. Aldridge, 145 Fed. 865, 76 C. C. A. 409; Blue Mt. Iron & Steel Co. v. Portner, 131 Fed. 57, 61, 65 C. C. A. 295; In re Edward Ellsworth Co. (D. C.) 173 Fed. 699. No case has been called to our attention in which a different conclusion has been reached. If any inference as to the question is to be drawn from the decision in Re Kennedy Tailoring Co. (D. C.) 175 Fed. 871, relied on by the appellees, it would seem to be that the insolvency there contemplated was insolvency in the bankruptcy sense, and in the Beatty Case it was specifically alleged in the bill of complaint that the debtor was insolvent in fact, as its assets were less than its liabilities. The decision in Re Golden Malt Cream Company, 164 Fed. 326, 90 C. C. A. 258, is directly in point, and to the effect that insolvency, as used in clause 4, means insolvency as defined in the bankruptcy act.

With regard to the first act of bankruptcy alleged in the petition (that on the 7th of November, 1912, receivers were put in charge of the debtor's property because of insolvency), the only evidence in its support presented at the trial was the bill, answer, and decree in the equity proceeding; and the question is presented whether the decree

and record in that proceeding disclose that the receivers were put in charge of the debtor's property because of insolvency (that is, because its assets, at a fair valuation, were not sufficient in amount to pay its debts), for unless it can be clearly determined from the decree, or record as a whole, that this was the sole or one of the substantial grounds on which the decree appointing the receivers was based, the adjudication in bankruptcy to the extent that its validity depends upon this alleged act of bankruptcy cannot be sustained.

In Russell v. Place, 94 U. S. 606, 608 (24 L. Ed. 214), the court, in considering the effect of a judgment when pleaded as a bar or offered as evidence in a subsequent suit between the same parties or their privies and for a different cause of action, said:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit (for a different cause of action) between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record (as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered), the whole subject-matter of the action will be at large and open to a new contention unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

And again, on page 610 of 94 U. S. (24 L. Ed. 214), the same court says:

"If upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence."

See, also, on this question, Beatty v. Andersen Coal Mining Co., 150 Fed. 293, 80 C. C. A. 181; In re Kennedy Tailoring Co. (D. C.) 175 Fed. 871, 873; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; In re Watts, 190 U. S. 1, 35, 23 Sup. Ct. 718, 47 L. Ed. 933; Metcalf v. Gilmore, 63 N. H. 174, 189.

[2] Does it appear from the bill, answer, and decree that it was alleged and determined that the assets of the debtor, at a fair valuation, were insufficient to pay its debts, and that that was the sole ground, or one of the substantial grounds, upon which the decree appointing the receivers was made? It is to be borne in mind in considering this question that the burden of proof is upon the petitioners to show these facts. It is also to be borne in mind that the record in the equity proceeding was the only evidence that was introduced in this case upon which these facts were to be determined, and that, if extraneous evidence could have been resorted to in case the record left it doubtful what was litigated or admitted and upon what the decree was based, no such evidence was introduced.

The decree does not state the ground or grounds upon which the receivers were appointed, and its terms are not coextensive with the allegations and prayers of the bill. It states that it was entered "upon

consideration of the bill of complaint and the answer thereto, and on motion of counsel for the plaintiff, the respondent, by its attorney, consenting thereto." We must therefore look to the bill and answer. The bill alleges as a specific ground for the appointment of receivers the inability of the defendant to meet its obligations as they mature in the ordinary course of business. This is an allegation of insolvency according to one of the common-law definitions of the term, but not as defined in section 1, cl. 15; and, being specially alleged in the bill and admitted in the answer, it may be assumed, inasmuch as it was a sufficient ground on which to appoint receivers, that it was at least one of the grounds, if not the sole ground, upon which the appointment was made. On the other hand, nowhere in the bill is it alleged that the defendant's property, at a fair valuation, is insufficient to pay its debts, and, although its liabilities are stated, the valuation of its assets other than that they are of great value is nowhere given. In the absence of such allegations, it cannot be said that the defendant by its answer admitted them to be true, or that in the absence of such an admission the court based its decree upon that ground.

Then, again, the prayers of the bill were granted only to the extent that they contemplated and sought the appointment of receivers to assume control of the business and conduct the company's affairs until otherwise ordered by the court. The prayer wherein it was asked that the plaintiff's indebtedness and that of other creditors be determined, and that the assets of the company, if they were insufficient to pay its indebtedness in full, should be equitably distributed, was not covered by the decree. This being so, the decree is alone consistent with the idea that it was made with a view to the preservation of the value of the defendant's assets as a going concern and of enabling the debtor, through an extension of credit and a continuation of its business, to realize a sum sufficient to pay its debts in full and to avoid insolvency if possible. In fact, all the allegations of the bill, so far as they were recognized by the decree, are consistent with the main allegation that the defendant was unable to meet its obligations in the ordinary course of business, and it seems to us that it would be putting upon them a strained construction to hold that the debtor, by admitting in its answer that its property was of great value, thereby admitted that it was insolvent in fact (that is, in the bankruptcy sense), and that the court made use of it as one of the grounds on which to base its decree appointing receivers.

[3] It has also been urged that the receivers appointed in this case were temporary, and that such an appointment was not an act of bankruptcy within the meaning of the clause under consideration. It does not seem to us that it is of any moment whether the receivers be termed temporary or permanent; that the real question is whether the decree appointing them was based on the insolvency of the debtor as defined in the bankruptcy act. If it was, the act of bankruptcy contemplated by the statute took place, and if it was not there was no act of bankruptcy within its meaning. In re Kennedy Tailoring Co. (D. C.) 175 Fed. 871; Blue Mt. Iron & Steel Co. v. Portner, 131 Fed. 57, 65 C. C. A. 295. The decisions in Zugalla v. Mercantile Agency,

142 Fed. 927, 74 C. C. A. 97, and Hudson River Electric Power Co. (D. C.) 173 Fed. 934, upon which the appellants rely, would seem to be based rather upon the fact that no adjudication of insolvency had been made in the equity proceeding in which receivers had been appointed than upon the nature of the receivership.

[4] As to the second alleged act of bankruptcy, the question is whether the defendant, being insolvent, applied for a receiver for its property.

In the bill in equity the plaintiff alleges: (1) That it is a citizen and resident of the state of Maine and brings the bill in behalf of itself and other creditors of the defendant, a citizen and resident of Massachusetts; and (2) that the defendant is indebted to the plaintiff in a sum not less than $25,000, a large part of which is overdue, and, though often demanded, remains wholly unpaid.

Both of the above allegations were essential to establish a case cognizable under the judiciary act of the United States by the federal court. The second allegation was also material to the establishment of the plaintiff's right to equitable relief.

The defendant in its answer admitted both allegations and by so doing waived its right to object to any insufficiency in the second allegation and material to the equitable relief desired in that it was not there alleged that the claim had been reduced to a judgment, and that execution had issued and been returned unsatisfied. Matter of Reisenberg, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 376, 14 Sup. Ct. 127, 37 L. Ed. 1113.

[5] Now, what was determined by the decree in the equity suit with reference to the application for receivers? It is evident that under the first allegation of the bill the court must have decided that the proceeding was one brought by the plaintiff, a citizen and resident of Maine, against the defendant, a citizen and resident of Massachusetts; and, under the second allegation, that the amount in controversy between the parties answered the jurisdictional requirement; and that this allegation, taken in connection with the subsequent allegations of the bill, entitled the plaintiff to equitable relief. It having, therefore, been determined in the equity proceeding that the party set out in the bill as plaintiff was the real plaintiff and a creditor of the defendant entitled to equitable relief, the decree, when introduced in the bankruptcy proceeding, in the absence of proof of fraud in its procurement, was and should have been regarded as conclusive evidence that the application for receivers was made by the McLean Sons Company and not by the Butler Company.

Moreover, it does not seem reasonable that Congress, in the enactment of clause 4, could have contemplated that a decree in an equity proceeding, determining who the applicant for receivers was, should be subject to attack when offered as evidence in a bankruptcy proceeding, unless it be for fraud or collusion. In this case it is expressly found that there was no fraud or collusion, and it was therefore not open to the bankruptcy court to disregard the decree and undertake to determine the question anew. Matter of Reisenberg,

208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403; In re Edward Ellsworth (D. C.) 173 Fed. 699; Exploration Mercantile Co. v. Pacific H. & S. Co., 177 Fed. 825, 101 C. C. A. 39; In re Duplex Radiator Co. (D. C.) 142 Fed. 906; In re C. Moench & Sons Co., 130 Fed. 685, 66 C. C. A. 37.

[6-9] But, if it were open to the bankruptcy court to disregard the decree and to determine this question anew, we are of the opinion the finding of the court below (that the application for receivers was made by Butler & Co.) was not authorized by the evidence. A corporation can act only through its officers and agents, but their action to bind the corporation must be within the scope of their authority. A general agent charged with the management of a corporation is not authorized to dispose of its entire property in a single transaction, in the absence of special authority so to do. If the directors of a corporation may authorize such a disposition of the property of the corporation, they can do so only at a duly warned meeting of the board, or one at which all are present. And the stockholders can confer such authority only by the vote of a majority in a corporate meeting duly warned or by unanimous agreement.

[10] The application for receivers in the equity proceeding involved action looking to a parting with the entire management and control of the business of Butler & Co. and if made by the company, while insolvent, was an act of bankruptcy. The evidence upon which the finding that Butler & Co. made the application was based was that certain agents and counsel for the corporation undertook to bring about the application by procuring a creditor, the McLean Sons Company, to make it in its name.

If procuring a creditor to make an application for receivers can be found to be the application of the corporation and an act of bankruptcy, it can only be so when there is proof that the agents had authority to take such a course of action. In this case the evidence discloses that there was no vote of the board of directors, or of the stockholders, authorizing the action, and no agreement of all the stockholders.

It is urged by the appellees that the directors and stockholders acquiesced in the action taken by these agents and ratified their conduct. But the directors of the corporation, having no authority to act singly, could not, except as a board, ratify action which they could not have authorized, except as a board. And the stockholders could not be found to have acquiesced in and ratified the action of the agents in question without proof that they knew what action was taken and that it was in behalf of the corporation. There was no evidence that all the stockholders knew what action these agents had taken. The equity proceeding, so far as the records would disclose, was the application of a creditor and would give no information as to what these agents had done. And the knowledge possessed by the agents of action taken by themselves in excess of their authority would not be imputable to the corporation or the stockholders.

As it appears that the action of these agents was unauthorized, and there was no evidence that it was subsequently ratified, the corporation could not be found to have made the application for receivers.

The situation in this case resolves itself into this: That Butler & Co., being insolvent in the bankruptcy sense, was put into the hands of receivers. This, however, is not an act of bankruptcy as defined in clause 4, as amended in 1903, and it is apparent that Congress did not intend to make it one. The amendment when introduced read:

"Being insolvent, applied for or was put in the hands of a receiver."

In the Senate its language was changed to read as finally enacted. Had it become a law as originally introduced, the facts in this case would disclose an act of bankruptcy, but, by enacting the clause as amended by the Senate, Congress manifested an intention to leave the situation presented by this case unprovided for, and it is not for the court to enlarge the meaning of the statute by construction and attempt to provide for the omitted situation by holding that the phrase, "because of insolvency," means insolvency other than as defined in section 1, cl. 15.

The power exercised by the court in extending the time for filing answers, and in allowing the receivers to appear, was discretionary. In re Everybody's Store, Inc.

In each case the decree will be as follows:

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with the opinion passed down the 10th day of September, 1913; and the appellants recover cost of appeal.

PUTNAM, Circuit Judge (dissenting). The burden of the litigation in this case is over the definitions given to the words "insolvent" and "insolvency" incorporated in the Bankruptcy Statutes by the amendment of 1903, so far as they relate to these appeals. A careful perusal of text-books and of the decisions of the courts bearing on the definitions to be given these words as applied here fails to show any authority for giving the peculiar definition to the words in question as applied here, except the Golden Malt Co., 164 Fed. 326, 90 C. C. A. 258. This case was much like many of the early decisions with reference to the bankruptcy statutes, where the conclusions were apparently reached without much consideration. The text was so hastily drawn that, on page 328, it declared the provision in question here was a part of the statute of July 1, 1898, when it came in by the Acts of 1903, 32 Stat. 797, as an entirely new topic; a fact which must be regarded in interpreting statutes, which must always be interpreted from an historical point of view in order to be correctly understood. It is true that the amendatory act of 1903 was strictly amendatory in such way as to embody the amendment into the original act of 1898; but, whatever the circumstances under which an amendment comes in, or the form which it takes, the courts are always at liberty to make a broad investigation and to

apply broad considerations with regard to construing an amendment, even more than with reference to construing any part of the body of the original statute, which latter, of course, is always qualified by the context. Here especially, while the statute of 1898 applied throughout to courts in bankruptcy, and therefore may justly be held to have made propositions from the uniform standpoint of those courts throughout, yet this amendment related to proceedings in courts of equity and common law; and in describing those proceedings it may be assumed to use the language of those courts and to construe that language as those courts would have construed it. It is not credible to hold that, in referring to proceedings of the courts of equity and common law, the words "insolvent" or "insolvency," under these circumstances, were to have any different construction than that usually given them in those courts.

By giving the words "insolvent" or "insolvency," as found in the amendment of 1903, the peculiar definition given them by the body of the act of 1898, we would practically defeat the purpose of the amendment, and the amendment would be inapplicable. No proceeding in either courts of equity or common law has ever yet, in appointing receivers or otherwise, used the words "insolvent" or "insolvency" in the special sense declared by the Bankruptcy Act of 1898. Giving these words the force which the opinion of the court gives them would be in substance declaring that no adjudication in bankruptcy based on the appointment of a receiver by a court of equity or common law was in fact and in substance justifiable, because there never has been any case where such an adjudication was secured in which the court which appointed the receiver has ever given to those words the peculiar definition given them by the Bankruptcy Act of 1898, or was ever asked to do so. In the Golden Malt Co. Case, to which we have referred, the adjudication in bankruptcy was finally refused. Not only has there never been any adjudication in bankruptcy based on the appointment of a receiver under circumstances like those stated in the opinion of the court, but there is no reasonable probability that there ever will be, as not only has no court of common law or equity ever accepted the definition of "insolvency" embodied in the bankruptcy statutes, but there is no reasonable probability that such courts ever will do so.

None of the cases cited in the opinion of the court seems to sustain its propositions. In order to avoid unnecessary prolixity, we refer to them only by the volumes and pages of the decisions. 106 Fed. 839, 45 C. C. A. 666, was decided before the amendment of 1903; 181 Fed. 422, was in the District Court, and turned on a question of fraud and collusion; 165 Fed. 249, has the same features as the case last referred to; 150 Fed. 293, 80 C. C. A. 181, the Beatty Case, quite well known, showed expressly that the proceeding in the state court declared only that the parties proceeded against were unable to meet their obligations as they came due; in 145 Fed. 865, 76 C. C. A. 409, the question we have here was referred to at page 868 but was not decided either there or at page 871; in 131 Fed. 57, 65 C. C. A. 295, the case was submitted to the jury in the District

Court from the aspect taken in the opinion of the court here but was disposed of in the Circuit Court of Appeals as a mere question of fact, without any disposition of the question-of law now brought to our attention; the other cases cited were in the District Court and of course are not authority on an appeal from the District Court, as there has been no such mass of them as would indicate a general acquiescence in the proposition now maintained. 139 Fed. 244, did not raise or discuss the question we have before us, although cited to sustain the decision of the District Court in 173 Fed. 699.

Therefore, while disposed to give full effect to the rule in this circuit with regard to following decisions of Circuit Courts of Appeals of other circuits, we cannot go so far as to adopt the Golden Malt Co. Case, which is inconsistent with the settled practice, and which practically nullifies the statute to which we are asked here to give effect. Therefore, as this is really the only substantial proposition which stands in the way of affirming the judgment of the District Court, we are of the opinion that that judgment should be affirmed.

We think some additional exposition is necessary with reference to the power of the court to permit the intervention of receivers for the purpose of resisting adjudications in bankruptcy. This matter is pertinent with reference to this case and with reference to the two cases on appeal concerning Everybody's Store, Incorporated. The basis of the argument in opposition to permitting the receivers to intervene rests on the mere letter of the statute, found in subsection "b" of section 18 of the Bankruptcy Act of 1898. That limited the right of opposition to the bankrupt or some creditor. The plain purpose of this subsection was to fix a limited time in order that the proceedings might be expedited. It would be an extraordinary proposition that any general provision of law of this character, or of any other character, unless unusually specific, should pull up by the roots in any particular case the application of a fundamental rule governing courts proceeding on equitable principles, including bankruptcy courts, and so denying the power permitting the intervention of receivers or anybody else having a title of any kind whatsoever. The power to intervene has been construed in equity in the most liberal manner where the rights of third parties are involved. This point was authoritatively determined under the present Bankruptcy Statutes in the Second Circuit, with the approval of the Circuit Court of Appeals for that circuit, in 183 Fed. 703, 106 C. C. A. 139, 33 L. R. A. (N. S.) 454, of the decision of the District Court in Hudson River Power Co., 173 Fed. 934. We think the uniform practice in this particular is in harmony with the general rules of equity, so that we would not be justified in disturbing it.