MAPLECROFT MILLS v. CHILDS et al.

(Circuit Court of Appeals, Fourth Circuit.    September 16, 1915.)

No. 1352.

1. BANKRUPTCY ☞60—ACT OF BANKRUPTCY—APPOINTMENT OF RECEIVER.

The appointment of a receiver for a corporation by a state court, under a statute authorizing such appointment where the defendant "is in imminent danger of insolvency," on a petition which showed that, while the corporation, by reason of general business conditions, was unable to meet its obligations, its assets at a fair valuation were worth nearly double the amount of its indebtedness, does not constitute an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a (4), as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (Comp. St. 1913, § 9587).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. ☞60.]

2. BANKRUPTCY ☞60—ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVER—"INSOLVENT."

To render the appointment of a receiver for a corporation an act of bankruptcy, within Bankr. Act July 1, 1898, § 3a (4), as amended by Act Feb. 5, 1903, § 2, it must be shown that the corporation was "insolvent," as defined in section 1 (15) (Comp. St. 1913, § 9585), in that its property at a fair valuation was not sufficient to pay its debts, and that the appointment was made because of such insolvency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. ☞60.

For other definitions, see Words and Phrases, First and Second Series, Insolvent.]

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville, in Bankruptcy; Henry A. M. Smith, Judge.

In the matter of the Maplecroft Mills, alleged bankrupt. Such corporation was adjudged a bankrupt on petition of C. S. Childs and others, on the instructed verdict of a jury (218 Fed. 659), and brings error. Reversed.

B. F. Martin and Joseph A. McCullough, both of Greenville, S. C. (McCullough, Martin & Blythe, of Greenville, S. C., on the brief), for plaintiff in error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James L. Mayson, of Atlanta, Ga., and John H. Earle, of Greenville, S. C. (Paul E. Johnson, of Atlanta, Ga., on the brief), for defendants in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. Petitioners, C. S. Childs and W. J. Fullerton, partners doing business as Wilson & Bradbury; Coal Creek Coal Company, a Tennessee corporation, and Chas. J. Webb, doing business in Philadelphia as Chas. J. Webb & Co., brought their petition in September, 1914, seeking to have Maplecroft Mills, a South Carolina corporation, declared an involuntary bankrupt. A single act of bankruptcy was alleged, to wit:

"That within four months preceding the filing of this petition, viz., on the 25th day of August, 1914, the said Maplecroft Mills, while insolvent, committed an act of bankruptcy, wherein it and its officers did, because of its insolvency, allow a receiver to be put in charge of its property under the laws of the state of South Carolina."

The answer of the mills denied that it had committed the act of bankruptcy set forth in the petition, or that it was insolvent, and averred that it should not be declared bankrupt for any cause alleged in said petition, and demanded a jury trial. The cause came on for trial before a jury, and as a part of their testimony petitioning creditors introduced in evidence the record from the state court in the case in which they alleged that a receiver had been appointed.

Thereupon the court, without hearing further evidence from the petitioners, and without affording respondent an opportunity to introduce evidence, held that the construction of the record was for the court, and if the court should determine that it appeared "upon the face of this record that the property of Maplecroft Mills was, upon the date stated, placed in the hands of a receiver by the state court because of insolvency, it is the duty of the court to instruct the jury to find a verdict to that effect." The court held that a "proper construction of the record so put in evidence was to the effect that it appeared upon the face thereof that, because of insolvency, a receiver was, on the 25th day of August, 1914, by the court of common pleas for Pickens county, placed in charge of Maplecroft Mills," and thereupon directed a verdict to that effect to be rendered by the jury, which was done.

Counsel duly excepted to the instructions of the court, and upon the coming in of the verdict moved the court for a new trial on the grounds set out in the record and in the order of the court overruling motion for a new trial. The court, after considering the motion for a new trial, filed an opinion overruling such motion, and the cause comes here on writ of error.

[1] The controlling question presented for our consideration is as to whether the court below erred in holding that it sufficiently appeared on the face of the petition filed in the court of common pleas for Pickens county, upon which a receiver was appointed, that Maplecroft Mills was insolvent as contemplated by section 3a of the Bankruptcy Act. The act as amended in 1903 provides that certain acts

of bankruptcy by a person shall consist of his having "made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property, or because of insolvency a receiver or trustee has been put in charge of his property under the law of a state, of a territory, or of the United States." Upon the proper construction of this provision depends the determination of this cause. Of course, if the receiver was appointed in the state court because of the insolvency contemplated by the statute, the ruling of the lower court was not erroneous.

The complaint in the state court, on its face, shows that the corporation was in imminent danger of insolvency; but it does not show actual insolvency. It appears from the record in the state court that there were no lien creditors; that there were on July 1, 1913, unsecured debts amounting in the aggregate to $176,184.23. It further appears from the petition that the alleged bankrupt had assets amounting in the aggregate to $313,068.20, consisting of property and plant, $253,489.80, and other assets as follows: $54,096.53, $3,790.91, $504.-94, $483.68, and $702.34, these amounting in the aggregate, as we have stated, to $313,068.20. Thus it will be seen that it appears on the face of the petition that the assets exceeded the liabilities $140,000. It is also alleged in the complaint filed in the receivership suit that if the property (by which we understand is meant the real estate and plant) were sold at a forced sale it might not bring 50 per cent. of its actual value.

However, assuming that this property should be sold at a forced sale and did not bring more than 50 per cent. of its true value, nevertheless, by such sale there could be realized the sum of $126,744.90. If we add to this the actual value of the quick assets, consisting of cash, cotton, stock in process, goods, insurance, interest, etc., which amounts to $59,578.40, a sufficient sum would be realized to pay the indebtedness and leave a balance of $10,000.

It is insisted by counsel for the alleged bankrupt that, if they had been afforded an opportunity in the court below, they could have shown that the plant and real estate were worth more than 50 cents on the dollar. Among other things, it appears in the complaint filed in the state court:

"That a large amount of this indebtedness is in the shape of notes payable, many of which are past due, and that another large amount is in the shape of accounts payable, of which also many are now past due; that many others of these debts will fall due within a very short time, and the defendant corporation is unable to pay said past-due indebtedness and the indebtedness that will shortly become due, and that it is without credit that will enable it to borrow the money with which to meet its obligations and continue its business; that a statement of its affairs, of date July 1, 1914, is attached hereto, marked 'Exhibit A,' and made a part of this complaint. Changes that have taken place since that time in the various items are inconsiderable. Plaintiffs further allege that the defendant corporation admits its inability to pay its debts, and plaintiffs are advised that many of the creditors threaten, and will immediately begin, to bring suit upon the obligations of the defendant corporation, and to collect by judgment and execution against the said defendant, with the result that the mills will be closed down and its property sacrificed, to the great detriment of creditors and stockholders, who will suffer irreparable injury unless this court intervenes; that, under normal condi-

tions, as plaintiffs are informed and believe, the defendant corporation could carry on its business, but that the European war and recent developments in the financial and industrial world render it impossible for the defendant corporation to finance its business, procure credit that it must have for that purpose, properly preserve its assets, and maintain it as a going concern, although the plant and business of the said corporation is worth much more as a going concern than if it were forced, from lack of funds, to shut down; that it has a well-organized labor force, employing about 125 people, and these, in case of a shut-down, would be thrown out of business and scattered, to the great detriment and loss of the defendant corporation, which has built up said organization at a large cost; that in the present condition of the money market, and in the adverse circumstances existing in the industrial and financial world, as plaintiffs are informed and believe, the property of the defendant corporation probably would not, at forced sale, bring fifty (50) per cent. of its actual value, and that it is greatly to the interest of the creditors and stockholders to conserve the property and business of the defendant corporation, and to this end it is advisable and necessary that a receiver be appointed of the assets, with full power to operate the plant, manufacture goods, to buy cotton and supplies, to sell the products, and to do all other things proper and necessary to continue said business; and that to this end the receiver be authorized to borrow money in order to carry on said business, and that he continue said business as a going concern until a reorganization can be effected, or a sale of the property be had, or until such time as it will be expedient or possible to make arrangements to meet the demands of its creditors; and that it is necessary, in order to conserve the assets and value of defendant's business, that all creditors and stockholders be enjoined from suing or bringing any legal proceedings, except in this action."

[2] It was obviously not the purpose of Congress, in using the terms "being insolvent," or "because of insolvency," to have the same apply when the facts upon which a receiver was appointed only show that its assets would not bring enough to pay its debts at a forced sale, or where there was imminent danger of insolvency. The fact that respondent deemed it necessary to make application for the appointment of a receiver in order to enable it to secure temporary relief should not be used to its prejudice in a court of bankruptcy, unless it clearly appears upon the face of the complaint filed in the state court that respondent was insolvent within the meaning of the Bankruptcy Act at the date of the filing of the same.

Section 1, clause 15, of the act, which is in the following language, clearly shows what is necessary to constitute insolvency:

"A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

This statute (while remedial) should be construed strictly in a case like the one at bar. In other words, its scope should not be enlarged so as to include transactions that may appear to be analogous but are obviously not contemplated by the statute. The South Carolina statute expressly authorizes the state court to appoint a receiver of a corporation when it is in imminent danger of insolvency, and, at most, the complaint shows no worse condition than that.

A court of bankruptcy has no power to extend the Bankrupt Act so as to cover a case where a receiver has been appointed under the authority of a state law on account of danger of insolvency, when the

statute expressly limits its operation to actual insolvency. It not infrequently occurs that a creditor like respondent has sufficient assets to pay his indebtedness provided he can temporarily avoid being "forced to the wall," and it could not have been the intention of Congress that such a person should be deemed a bankrupt as defined by clause 15, section 1, of the Bankruptcy Act.

In other words, it is just as essential in a proceeding of this kind that it should appear by allegation and proof that an alleged bankrupt is insolvent within the meaning of clause 15, section 1, of the Bankruptcy Act, as it would be if this were a petition filed for the purpose of having a creditor declared an involuntary bankrupt. It should be borne in mind that the burden is upon the petitioners to show that respondent has committed an act which brings it within the purview of the statute. Collier on Bankruptcy (10th Ed.) p. 104, contains the following:

"Petitioning creditors, relying on this act of bankruptcy, must allege and prove insolvency when the application for a receiver or trustee was made, and if the receivership or trusteeship was secured upon the application of any other person it must be shown that such receivership or trusteeship was obtained because of insolvency."

The case of In re Wm. S. Butler & Co., Inc., 207 Fed. 705, 125 C. C. A. 223,[1] is analogous to the case at bar. This case was decided by the Circuit Court of Appeals for the First Circuit; Judge Putnam dissenting. The opinion on behalf of the majority of the court was written by Bingham, Circuit Judge. It deals with the subject in a comprehensive manner, and many cases are cited in support of the conclusion reached by the majority of the court. Syllabus 2 is in the following language:

"Where the appointment of receivers for a corporation was claimed as an act of bankruptcy, and the only evidence of the grounds on which they were appointed was the bill, answer, and decree, which bill applied for the appointment on the ground that the corporation was unable to meet its obligations as they matured in the ordinary course of business and did not allege that the corporation's property at a fair valuation was insufficient to pay its debts, and the prayer was granted only to the extent of appointing receivers to assume control of the business and conduct the company's affairs until otherwise ordered by the court, there was no finding of insolvency sufficient to constitute an act of bankruptcy."

This case is very much in point, and, we think, properly disposes of the question involved in this controversy. While we have carefully considered the very able and persuasive opinion of the court below we are not prepared to accept the views therein expressed. We have also considered the cases relied upon by petitioners to sustain their contentions. They are easily distinguished from the case at bar, and, therefore, in our opinion do not apply to the question involved herein.

In view of the facts upon which the appointment of a receiver in the state court was made, we are impelled to the conclusion that the court below erred in holding that the respondent was insolvent in the sense in which the term is used in the Bankruptcy Act. To say the least, respondent was entitled to have the question as to its insolvency tried by a jury. The petitioners may, if so advised, amend their petition so

[1] Petition for certiorari denied by Supreme Court of the United States.

as to allege insolvency as contemplated by section 1, clause 15, of the Bankruptcy Act.

We do not deem it necessary to enter into a discussion of the questions raised by the other assignments of error.

For the reasons stated, the judgment of the lower court is reversed, and the case remanded, with instructions for further proceedings in accordance with views herein expressed.

Reversed.