## In re SEDALIA FARMERS' CO-OP. PACKING & PRODUCE CO.

(District Court, W. D. Missouri, C. D.    February, 1919.)

1. **Bankruptcy ☞54—"Fair valuation" of property, as respects insolvency, defined.**

   Within Bankruptcy Act, § 1, cl. 15 (Comp. St. § 9585), providing that a person shall be deemed insolvent when his property shall not at a fair valuation be sufficient to pay his debts, "fair valuation" means the fair market value, or value which the bankrupt might realize for itself, or the value that can be made promptly effective by the owner of the property for payment of debts.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fair Value.]

2. **Bankruptcy ☞60—Appointment of receiver because of insolvency need not contemplate statutory definition of insolvency.**

   Under Bankruptcy Act, § 3a, cl. 4 (Comp. St. § 9587), specifying the appointment of a receiver because of insolvency as an act of bankruptcy, insolvency, as defined in section 1, cl. 15 (section 9585), need not be the ground of the appointment.

3. **Bankruptcy ☞60—Bankrupt must be insolvent at filing of petition and appointment of receiver.**

   When the appointment of a receiver because of insolvency is the act of bankruptcy relied on, the bankrupt must be actually insolvent within the meaning of the Bankruptcy Act (Comp. St. §§ 9585–9656), both at the time of such appointment and at the time of filing the involuntary petition.

4. **Bankruptcy ☞60—Appointment of receiver because of common-law insolvency is act of bankruptcy.**

   Where the required degree of insolvency exists and is the proximate cause of a receivership, the appointment is because of insolvency, within Bankruptcy Act, § 3a, cl. 4 (Comp. St. § 9587), though the petition for a receivership alleges only common-law insolvency.

5. **Bankruptcy ☞60—Appointment of receiver is act of bankruptcy, though petition for appointment was insufficient.**

   Where a receiver was appointed because of insolvency, and the property was placed in his charge, the act of bankruptcy was complete, though the petition did not give the court jurisdiction to make the appointment, or though it was improvidently made.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Bankruptcy ☞60—Receiver held appointed because of insolvency.**

A receiver appointed by a state court for a corporation on a petition alleging that its assets were depreciating, that it was without funds to meet its obligations, etc., and asking the appointment of a receiver to manage the corporation, marshal its assets, etc., *held* appointed because of insolvency within Bankruptcy Act, § 3a, cl. 4 (Comp. St. § 9587).

In Bankruptcy. Proceeding against the Sedalia Farmers' Co-operative Packing & Produce Company. On exceptions to the report of a special master. Report confirmed and approved.

Mercer Arnold, of Joplin, Mo., for petitioning creditors.
G. W. Barnett, of Sedalia, Mo., for bankrupt.

VAN VALKENBURGH, District Judge. August 29, 1918, creditors of the alleged bankrupt filed suit in the circuit court of Pettis county, Mo., making certain allegations upon which they prayed the appointment of a receiver, and upon due hearing such receiver was appointed. This step was first contemplated by the officers and directors of the company, who were advised the appointment of a receiver was the best thing that could be done; the idea being "to avoid being sued, to hold the business intact, and to try and realize all that we could." The creditors' bill subsequently filed was what is known as a friendly suit. The corporation entered its voluntary appearance by its president, but filed no answer and offered no opposition to the prayer of the bill. The court first made a temporary order appointing one H. F. Fricke receiver, and later, during the October term, said court rendered judgment, finding all the issues for the plaintiff, and confirming the appointment of Fricke to continue as receiver until the further order of the court. Later an involuntary petition in bankruptcy was filed; the act of bankruptcy counted upon being that, the corporation being insolvent, because of insolvency a receiver had been put in charge of its property under the laws of the state of Missouri.

November 18, 1918, in the absence of the District Judge from the Central division of the Western district of Missouri, the referee in bankruptcy appointed one A. L. Shortridge as receiver of the alleged bankrupt. The latter immediately qualified, and the following day the state receiver turned over to said federal receiver all the assets of said corporation; and the latter, acting under his appointment aforesaid, now has the care and custody thereof. The alleged bankrupt filed answer putting in issue the allegations of the petition in bankruptcy, denying insolvency, and denying the commission of the act of bankruptcy charged. The issues made by said petition and answer were referred to Holmes Hall, Esq., referee in bankruptcy, as a special master to take the testimony and report his findings of fact and conclusions of law to the court. This report was duly made, as stated, and the matter comes up on the alleged bankrupt's exceptions to this report.

Two questions are presented: (1) Was the alleged bankrupt insolvent when the receiver was appointed in the state court, and when the petition in bankruptcy was filed? (2) Was the receiver in the state court put in charge of its property because of insolvency?

[1] Upon the showing disclosed by the record, I have no hesitation in finding that the corporation was insolvent on both said dates. The referee has so found, and the evidence fully sustains him. The aggregate of its property was not, at a fair valuation, sufficient in amount to pay its debts.

"Fair valuation means a fair market value—that is at a value which the corporation might have realized on them for itself." In re Marine Iron Works (D. C. N. Y.) 20 Am. B. R. 390, 159 Fed. 753.

And as announced by Judge Amidon in Stern v. Paper (D. C. N. D.) 25 Am. B. R. 451, 453, 183 Fed. 228, 230:

" 'Fair valuation,' within the meaning of subdivision 15 of section 1 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]), means a value that can be made promptly effective by the owner of property 'to pay debts.' * * * 'Fair valuation' means such a price as a capable and diligent business man could presently obtain for the property after conferring with those accustomed to buy such property."

Judged by this standard, insolvency appears with sufficient clearness. The petition in the state court alleges that much of the physical property was inconvertible, except at greatly diminished value, and that business in the ordinary course could not be conducted without continued loss. During the state receivership such losses did persist, aggregating a large amount. The enlistment of new capital was found to be impracticable and inexpedient. Dissolution and liquidation is inevitable and is in the process—the contest being whether it shall take place in the state court or under the paramount national law.

[2] We come, then, to the second and deciding point of whether a receiver was put in charge of the property by the state court because of insolvency. The question here is a nicer one, made so by a tendency toward what I regard as ultra-strict construction in a number of federal jurisdictions. The greater weight of the decisions thus far announced is that the word "insolvency," as here used, means insolvency within the definition of the Bankruptcy Act (Comp. St. §§ 9585–9656). This is founded upon the following provision in clause 15 of section 1 (section 9585) of the act:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property * * * shall not, at a fair valuation, be sufficient in amount to pay his debts."

Several courts in a number of decisions have held that this section sets forth the meaning Congress intended to be given to the word "insolvency," as well as to the word "insolvent," as used in section 3a, clause 4 (section 9587). While this conclusion is plausible under known rules of statutory construction, and at first impression seems unquestionable, nevertheless I cannot yield acceptance in view of the manifest spirit and purpose of the national act. It is true, of course, that no one can be insolvent within the meaning of this act except in conformity with the express definition of insolvency, both at common law and as recognized in the statutes of various states, which Congress may well have had in mind when dealing with procedure in such jurisdictions.

It will be noted that Congress herein nowhere says that the word "insolvent" (or, by analogy, "insolvency"), as used within the provisions of this act, shall be defined thus and so. It merely declares under what conditions a person shall be deemed insolvent to such extent as to bring him within its provisions. This may be a fine distinction, but it is a significant one, because in the provision in question we are dealing with a proceeding in a court of a state, in which "insolvency" has its common-law meaning; to wit: inability to meet obligations as they become due; and the petitioning creditors charge that the receiver was put in charge of this property under the laws of this state because of such insolvency. It is a matter of common knowledge at the bar that receivers are appointed by state courts under precisely such circumstances. This is done because of such insolvency; and it would probably rarely, if ever, occur that the exclusive form of insolvency, as defined in the Bankruptcy Act, would be specifically stated in a petition addressed to a circuit court of this state; particularly would this be true if the pleader desired the estate to be administered and distributed by the state court and not by a court of bankruptcy. This would open an obvious avenue for evasion of one of the most important provisions of the national act. This seems to be the view of Judge Putnam in his dissenting opinion in Re Wm. S. Butler & Co. (C. C. A. 1st Cir.) 30 Am. B. R. 502, 514, 207 Fed. 705, 715, 125 C. C. A. 223, 233. He says:

"By giving the words 'insolvent' or 'insolvency,' as found in the amendment of 1903, the peculiar definition given them by the body of the act of 1898, we would practically defeat the purpose of the amendment, and the amendment would be inapplicable. No proceeding in either courts of equity or common law has ever yet, in appointing receivers or otherwise, used the words 'insolvent' or 'insolvency' in the special sense declared by the Bankruptcy Act of 1898. Giving these words the force which the opinion of the court gives them would be in substance declaring that no adjudication in bankruptcy based on the appointment of a receiver by a court of equity or common law was in fact and in substance justifiable, because there never has been any case where such an adjudication was secured in which the court which appointed the receiver has ever given to those words the peculiar definition given them by the Bankruptcy Act of 1898, or was ever asked to do so."

[3, 4] I concur in the language quoted, and I believe this construction is necessary to preserve the integrity and efficacy of the amendment in question. It is, however, of course, necessary to find that the bankrupt was actually insolvent, within the meaning of the Bankruptcy Act, both at the time of the alleged act and at the time of filing the involuntary petition. The reasoning of the learned district judge in Re Maplecroft Mills (D. C. S. C.) 33 Am. B. R. 815, 218 Fed. 659, is to the same effect. That case was reversed by the Circuit Court of Appeals of the Fourth Circuit, under the same title. 35 Am. B. R. 311, 226 Fed. 415, 141 C. C. A. 245. The latter court appears to have adopted the views in Re Wm. S. Butler & Co., supra; but in that case it will be remembered that the South Carolina statute expressly authorizes the courts of that state to appoint a receiver of a corporation when it is in immediate danger of insolvency, and such was the allegation of the complaint. That court did, however, permit the petitioners, if so advised, to amend their petition so as to allege insolvency, as contemplated by section 1, clause 15, of the Bankruptcy Act. This

brings us to a consideration of what is meant by the words "because of insolvency." All forms of insolvency are certainly closely related, and because the petition for the state receiver alleges only common-law insolvency, it should not, therefore, necessarily follow that the receiver appointed under such a petition was not put in charge of the property because of insolvency as recognized by the Bankruptcy Act, if it be further found that such insolvency actually existed. There are, perhaps, holdings which intimate that the issues framed in the pleadings and the decree of the court, presumed to be responsive thereto, are decisive of this question, but to this I cannot agree at all. This, again, would suggest a ready means of evasion to the skillful pleader. The spirit of the Bankruptcy Act requires that this consideration must be one of substance rather than of technical pleading. The words "because of insolvency" should be, and are, broad enough to include all cases where the requisite degree of insolvency is present, and was the proximate cause of the receivership.

[5, 6] In the instant case, however, the Sedalia corporation was in fact insolvent, and in my opinion, as in that of the master, the word convincingly shows that the receivership in the state court was because of that insolvency. The petition is shrewdly drawn, with the evident purpose of avoiding the federal jurisdiction. It invokes no power, statutory or otherwise, of the Pettis county circuit court to appoint a receiver upon any other ground. That that court may, therefore, have been without jurisdiction and that the appointment may have been improvidently made, is beside the question. The receiver was appointed, the property was placed in his charge and the act of bankruptcy was complete. Exploration Mercantile Co. v. Pacific H. & S. Co. (C. C. A. 9th Cir.), 24 Am. B. R. 216, 177 Fed. 825–840, 101 C. C. A. 39. The petition sets out an intolerable condition. It shows that the assets are depreciating, that the company is without funds to meet its obligations, that the creditors are imperiled in the collection of their claims and that the real estate and equipment are not worth nearly so much, for purposes other than those for which it is now used, nevertheless that the defendant is running the business at a loss, and will continue to run it at a loss, unless restrained from further operating the plant; that a condition of temporary insolvency then existed, and that the business of the company will be greatly imperiled and weakened unless the defendant is restrained from continuing the business in the ordinary way. This makes out a pretty strong case of present insolvency, with no hope of improvement in the future.

What, then, is the state court asked to do? This is best gleaned from the prayer itself:

"Wherefore, the premises considered, the plaintiffs pray that the defendant corporation be enjoined and restrained from further buying stock or from operating said plant and from contracting any further obligations and be restrained from continuing the business, but that the management of the same be taken out of its hands and that in order to preserve the assets of said corporation and to protect the interests of these plaintiffs and other creditors that a receiver be appointed, to take charge of and manage the said corporation, to the end that such receiver may marshal the assets under the order of the court and collect the indebtedness due to the corporation and

realize on its assets, in order that these plaintiffs and others may be paid and for all other and further relief as to the court may seem proper and just."

If this does not state a prayer for dissolution, liquidation, and distribution of assets, it is difficult to discover what purpose is stated. No concrete subject of litigation between the parties is stated. The receiver is not asked for to conserve the property, and to prevent waste and loss pending some ultimate result of litigation, such as foreclosure, determination of title, or the like. No mismanagement or misconduct on the part of the officers or directors is alleged. Just a receiver, for an indefinite period, for what can be the only ultimate object contemplated, and that is, to marshal the assets, collect the indebtedness, and realize on the assets in order to pay debts and distribute the proceeds for the benefit of stockholders, creditors and all concerned. The only possible inference is that the receiver was put in charge of the property of this insolvent corporation to wind up its affairs because of its insolvency within the meaning of the Bankruptcy Act.

One of the general purposes of the bankruptcy law is to provide a uniform national law by which insolvent debtors can make a pro rata distribution of their assets among creditors. Prior to this amendment if a corporation sought to wind up its affairs and distribute its assets by means of a receivership, such a proceeding did not constitute an act of bankruptcy, and, consequently, creditors were entirely deprived of the valuable rights and safeguards provided by the bankruptcy law. This amendment was designed to correct that evil. In the view I have taken, I find myself convincingly supported by the Circuit Court of Appeals of the Ninth Circuit. In Exploration Mercantile Co. v. Pacific H. & S. Co. et al. (C. C. A. 9th Cir.) 24 Am. B. R. 216, 177 Fed. 825, 101 C. C. A. 39, Judge Morrow says:

"With respect to the application for a receiver it may be conceded that if it appears from the record and is established by proof that the application is made under some statutory authority or general equity jurisdiction having no relation to insolvency, then the act of applying for a receiver is not an act of bankruptcy. But when it appears that the application for a new receiver has relation to insolvency, and that the purpose of the proceeding is to have the corporation managed with a view to its dissolution and the distribution of its assets among the creditors of the insolvent, then the application for a receiver is clearly an act of bankruptcy."

It follows from the foregoing that the report of the master should be in all things confirmed and approved, and it is accordingly so ordered. With respect to the compensation of the master, both the bankrupt and its creditors are invited to aid the court by an expression of their views. It is apparent that the work of this reference was considerable. The questions presented required careful and exhaustive investigation and consideration. This must not be left out of mind in determining upon the measure of compensation to be awarded.