### HILB et al. v. AMERICAN SMELTING & REFINING CO.

(District Court, S. D. Ohio, W. D. February, 1921.)

1. **Bankruptcy ⬅═60—Inability to pay debts maturing held "insolvency," and appointment of receiver an act of bankruptcy "because of insolvency."**

Where there were suits of creditors pending against a corporation which was actually insolvent in the bankruptcy sense and claims in the hands of attorneys for collection, and it feared judgments and executions thereon, and could not pay its debts as they matured, there was a condition of "insolvency" as the term is commercially used, and within the meaning of laws of Ohio, and appointment of a receiver on application of a stockholder instituting the proceeding as an indorser of past-due notes of the corporation was an act of bankruptcy, the receivership being "because of insolvency" within the meaning of Bankruptcy Law, § 3a, subd. 4 (Comp. St. § 9587), although the application for appointment of the receiver did not say that the corporation was insolvent, but was careful to aver that it was solvent in the sense of the Bankruptcy Law (Comp. St. §§ 9585–9656), and that its assets at a fair valuation were more than sufficient to pay all of the indebtedness.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

2. **Bankruptcy ⬅═60—Receivership under state law because of insolvency an act of bankruptcy.**

Where, because of insolvency, a receiver has been put in charge of corporate assets under the laws of a state or of a territory or of the United States, an act of bankruptcy is committed; that is, when the laws of the state provide for a receivership on the ground of insolvency, and are applied to a corporation insolvent in the bankruptcy sense, the act of bankruptcy is complete.

In Bankruptcy. Petition by Charles R. Hilb and others to declare the American Smelting and Refining Company, bankrupt. Defendant adjudged a bankrupt.

Kramer & Bettman and Wm. R. Collins, both of Cincinnati, Ohio, for petitioning creditors.

Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, for bankrupt.

PECK, District Judge. This case is here upon the creditors' amended petition, which avers that within four months of the filing of the petition on the 15th of January, 1920, the defendant company, while insolvent, committed an act of bankruptcy, in that it did heretofore, to wit, on the 15th day of January, 1921, while insolvent, make application for the appointment of a receiver for its property, in the insolvency court of Hamilton county, Ohio, and because of insolvency

---

a receiver has been put in charge of its property under the laws of the state of Ohio. Petitioners pray that the defendant may be adjudged a bankrupt. Defendant denies that it has committed the act of bankruptcy set forth in the petition, or that it is insolvent, and avers that it ought not to be declared bankrupt for any cause in the petition alleged.

This cause was referred to an auditor, to report upon the solvency or insolvency of this corporation at the date of the commission of the alleged act of bankruptcy and at the date of the institution of these proceedings, and he reports that at both dates the corporation was insolvent by some $40,000; that the aggregate of its property at a fair valuation was not sufficient in amount to pay its debts. The conclusions of the auditor are unchallenged. From the evidence adduced I find that the allegations of the creditors' petition, other than those charging the act of bankruptcy, presently to be considered, are true.

Coming now to the act of bankruptcy alleged, it appears from the evidence that the defendant, being, as has been found, an insolvent corporation upon January 15, 1921, was the defendant in an action that day filed against it in the court of insolvency of Hamilton county, Ohio, by Harvey Cantor, a director and one of the two managing officers of the corporation. There were five stockholders, of whom four were members of the same family, Harvey Cantor, his father, his mother, and his brother owning all but one share of stock, which was held by an employee, presumably to qualify him as a director. The corporation was managed by Harvey Cantor and his father. Harvey Cantor was on that day the indorser upon certain promissory notes past due, in the aggregate $6,236, of which the corporation was the maker. The corporation was in financial difficulty and embarrassment, and he consulted counsel concerning his own obligation as indorser and concerning the affairs of the company, and determined to take proceedings for the purpose of securing the appointment of a receiver. There was no meeting of the board of directors. There is no evidence that the other directors, except his father, were informed of his purpose. He states that his father did not agree with him in the propriety of this step. Nevertheless he proceeded and filed his petition in the court of insolvency, setting up his notes and the fact of his indorsement and that they were past due and unpaid, setting up also that he was indorser upon some other notes not yet due. He further alleged that the defendant was indebted to divers creditors whose claims were past due and that other creditors of the defendant had brought suit against it, which suits were then pending; that other claims were in the hands of attorneys for collection; that judgments and executions were threatened against the property of the defendant; that the property would thereby be offered for sale, and, if sold in that manner, would realize but a small part of its real value, but that, if it could be kept from such sale and its product sold in the usual course of business, the business would be conserved and saved from sacrifice, which would benefit the creditors of the defendant, the plaintiff, and all parties in interest; and that he was entitled to have the property, in which he had an

interest, saved from loss or material injury. He further averred that the assets of the defendant, at a fair valuation, were more than sufficient to pay all its indebtedness; that the company was amply solvent; but that, owing to the then present financial and commercial stringency, the assets of the defendant were in danger of being dissipated and impaired. He further averred that the business of the defendant would be mismanaged, the creditors of the defendant would levy executions and sell the property at forced sales, and that not enough money would be realized to pay the claims of the creditors and indemnify and repay the plaintiff the amount of his indorsements. The prayer of his petition was that a receiver be appointed, authorized, and empowered to continue the business of the defendant until the further order of the court; that the assets might be ordered sold by the receiver to be appointed by the court, at such times and in such manner as will be most conducive to the interests of the persons in interest, so that the receiver will be able to realize the highest and best price for the assets of the defendant, and for such further relief as he might be entitled to have.

The application was presented to the court. Counsel for the company asked further time to investigate, which was not allowed; and an order was made to the effect that the court found that the defendant corporation had had due notice of the hearing and that the plaintiff was an indorser on promissory notes and negotiable paper, a comaker thereto with the defendant company; that the promissory notes are due; that defendants have neglected to pay or satisfy them, and they are unpaid; and that, unless a receiver is appointed, the assets of the defendant company will be dissipated, to the great and irreparable damage of the petitioning creditors. The order further recites, "The court further finds from the evidence that the plaintiff is solvent, and that his assets are in excess of his liabilities"—probably an error in the drafting of the order, by which, no doubt, it was intended to find that the defendant was solvent and its assets were in excess of its liabilities.

Thereafter the receiver took charge of the business. The defendant acquiesced in the receivership. The plaintiff Harvey Cantor was appointed manager for the receiver at a salary of $500 a month, and the plaintiff's father was appointed assistant manager at a like salary. No effort on the part of defendant was made to contest the receivership or otherwise dispose of it.

[1] Do these facts show that because of insolvency a receiver has been put in charge of the defendant's property under the laws of the state of Ohio within the meaning of section 3a (4) of the Bankruptcy Law?

The petition shows beyond a peradventure that the defendant was unable to meet its obligations in due course There were suits of creditors pending against it, claims in the hands of attorneys for collection, and it feared judgments and executions thereon. It obviously could not pay its debts as they matured. This situation shows a condition of "insolvency," as the term is commercially used, and within the meaning of the laws of Ohio and as defined by its highest court. In Mitchell v. Gazzam, 12 Ohio, at page 336, it is said that insolvency

in the mercantile sense means inability to pay debts according to the ordinary usages of the trade—

"but in the broad sense used by the statute it means a person whose affairs have become so deranged that he is unable to pay his debts as they fall due; and if, from such a deranged state of his affairs, and * * * inability to meet his moneyed engagements, he should transfer his property to a trustee to pay his debts, we should regard such assignment as made in contemplation of insolvency, and within the meaning of the statute."

See, also, American Hosiery Co. v. Baker, 18 Ohio Cir. Ct. R. 604.

It is impossible to conclude otherwise than that the defendant then was, and by the plaintiff's petition in the insolvency court was alleged to be, "insolvent," in that sense of the term in which it has been used in the law of Ohio. He did not say that it was insolvent, but he pleaded facts showing its insolvency within such meaning, and those facts were the basis for the appointment of the receiver. He was indeed careful to aver that it was solvent in the sense of the Bankruptcy Law, "that its assets at a fair valuation are more than sufficient to pay all of the indebtedness, and that the company is amply solvent." So that the situation was that he averred such facts of insolvency as to him seemed necessary to procure the appointment of a receiver under the laws of the state of Ohio, but refrained from averring such further insolvency, although it actually existed, as would bring him within the purview of the Bankruptcy Law (Comp. St. § 9585–9656).

His action was founded on the doctrine of the case of Barbour v. National Exchange Bank, 45 Ohio St. 133, 12 N. E. 5, in which it was held that an indorser of the past-due notes of an insolvent corporation might bring an action in equity to apply the funds of the principal debtor to the payment of the obligation, and, as part of his remedy, have a receiver appointed. It will be found by reference to that case that the corporation there was insolvent. In the syllabus (which in Ohio is the law of the case), it will be found that it is stated that "S. was surety of an insolvent manufacturing corporation." The insolvency referred to there is perhaps that degree of insolvency known as mercantile or commercial insolvency, the inability to pay maturing debts.

That the plaintiff Cantor alleged that the corporate assets were more than sufficient to meet the obligations was mere surplusage and immaterial, and obviously designed to avoid the effects of the Bankruptcy Law. That allegation added nothing to his cause of action. His petition for a receiver and liquidation would have been as strong had he alleged the reverse.

If we assume that the finding in the entry appointing the receiver "that plaintiff is solvent, that his assets were more than sufficient to meet his liabilities," was intended to be a finding that the *defendant* was solvent in the sense that *its* assets were more than sufficient to meet *its* liabilities, it was not responsive to any direct issue made in the case, because Cantor's right to the redress he sought was not based upon, nor aided by, a showing of "solvency" within the bankruptcy meaning of the term, but upon "insolvency" within the common-law meaning of the term. That expression is to be taken as a limitation

placed by that court upon its finding with regard to the condition and affairs of the corporation, but it is not an adjudication of solvency in bankruptcy sense which will be binding here, both because that issue was not involved and because the creditors, generally, were not parties to that proceeding. Reynolds v. Stockton, 140 U. S. 254, 268, 11 Sup. Ct. 773, 35 L. Ed. 464.

The evidence, therefore, shows that the insolvency court acted upon a showing of commercial insolvency. Are we precluded here from determining the real extent of that insolvency, and whether it was in fact such insolvency as is defined by the Bankruptcy Law? The greater includes the less. The court of insolvency acted upon the showing made that the loss was present. But should not this court, upon the petition of creditors, who were not parties to that proceeding, ascertain the true and real extent of that insolvency? Upon this subject there is a conflict of authorities. It has been held by courts of the United States that the record must affirmatively show that the state court acted upon such insolvency as would bring the case within the bankruptcy definition. In re William Butler Co. (C. C. A., 1st Cir.) 207 Fed. 705, 30 Am. Bankr. Rep. 502, 125 C. C. A. 223. However, there was strong dissent. And in another aspect that case was not followed by the Circuit Court of Appeals of this circuit in James, etc., Co. v. Dayton Coal & Iron Co. (C. C. A., 6th Cir.) 223 Fed. 991, 34 Am. Bankr. Rep. 649, 139 C. C. A. 367. In Maplecroft Mills v. Childs (C. C. A., 4th Cir.) 35 Am. Bankr. Rep. 311, 226 Fed. 415, 141 C. C. A. 245, and in Valentine Bohl Co. (C. C. A., 2d Cir.) 34 Am. Bankr. Rep. 855, 224 Fed. 685, 140 C. C. A. 225, the same rule was stated, but the defendant in each case appeared to the court to be not insolvent in the bankruptcy sense. On the other hand, it was said in the case of Exploration Mercantile Co. v. Pacific Hardware & Steel Co. (C. C. A. 9th Cir.) 24 Am. Bankr. Rep. 216, 177 Fed. 825, 101 C. C. A. 39:

"With respect to the application for a receiver it may be conceded that, if it appears from the record and is established by proof that the application is made under * * * statutory authority or general equity jurisdiction having no relation to insolvency, then the act of applying for a receiver is not an act of bankruptcy. But when it appears that the application for a receiver has relation to insolvency, and that the purpose of the proceeding is to have the corporation managed with a view of its dissolution and the distribution of its assets among the creditors of the insolvent, then the application for a receiver is clearly an act of bankruptcy."

In Stewart Petroleum Co. v. Boardman et al. (C. C. A., 8th Cir.) 45 Am. Bankr. Rep. 573, 264 Fed. 826, a receiver was appointed in a state court on the ground that the defendants' property was so mortgaged and pledged that it was insolvent and could not meet its obligations, and that its officers had abandoned its business. It was held that the receivership was "because of insolvency" within the meaning of section 3a (4) of the Bankruptcy Act (Comp. St. § 9587). It will be noted the allegation in the state court proceeding was of a common-law insolvency and did not fulfill the definition of section 1a (1-15) of the Bankruptcy Act (Comp. St. § 9585). The facts with regard to the appointment of the receiver, including the grounds for the same, seem

to have been practically the same as those shown in Re Wm. Butler & Co., supra. The evidence in the bankruptcy court showed, however, that the defendant was insolvent within that definition.

Now, what have we here? An insolvent corporation in bankruptcy sense; a receivership upon a ground having the most real relation to such insolvency; a proceeding for the winding up of the corporation, sale of its assets, and distribution of the proceeds among its creditors. A like case is thoroughly considered by Judge Van Valkenburgh in Re Sedalia Farmers' Co-operative Packing & Produce Co. (D. C. Mo.) 45 Am. Bankr. Rep. 287, 268 Fed. 898, and the conclusion that he reaches is that, when the appointment of a receiver because of insolvency is the act of bankruptcy relied on, the bankrupt must be actually insolvent within the meaning of the Bankruptcy Act at the time of the appointment and at the time of the filing of the involuntary petition, but that, where the required degree of insolvency exists and is the proximate cause of the receivership, the appointment is because of insolvency within the meaning of the Bankruptcy Law, although the petition for a receivership alleges only a common-law insolvency. And it seems to me that such is the conclusion which should be reached in the present case; otherwise one may allege a degree of insolvency just sufficient to bring the case within the state law and procure the appointment of a receiver and the distribution of the assets of a corporation actually insolvent within the meaning of the Bankruptcy Law, and thus defeat what the amendment of 1903 to the Bankruptcy Law (32 Stat. 797) was obviously intended to accomplish—the administration of the estate of an insolvent corporation under the Bankruptcy Law instead of a state receivership invoked for that purpose.

Indorsements by corporate officials of the obligations of embarrassed corporations are far from unusual. If, in every such instance, the official who has so indorsed may, by setting up his indorsement in the state court, procure the administration of the insolvent's estate by a receiver there, there would certainly be a great limitation to what was intended to be an exclusive jurisdiction of bankruptcy courts in such instances.

[2] Furthermore, it is to be noted that it is when because of insolvency a receiver has been put in charge "under the laws of a state, or of a territory, or of the United States," that an act of bankruptcy is committed. This means that, when the laws of a state provide for receivership on the ground of insolvency, and are applied, the act of bankruptcy is complete. In such case the insolvency meant would seem to be the insolvency known to the laws of the state. Obviously the receivership application in the state court would be made to conform to the laws of the state, and good pleading would require the applicant to go no further. In other words, it would seem that the words "under the laws of a state" may be fairly deemed to apply to the entire preceding phrase, including the words "because of insolvency." To read it otherwise is to leave it optional with the applicant for a receiver of a corporation that is actually insolvent under the bankruptcy definition whether, by disclosing the entire fact, to subject

the corporation to the Bankruptcy Law, or, by disclosing only so much as is necessary to comply with the state law definition, to avoid bankruptcy and accomplish a winding up and distribution in the state court, and perhaps leave in force preferences or judgments secured within four months which an adjudication of bankruptcy would destroy. Such construction seems hardly consistent with the title of "An act to establish a uniform system of bankruptcy throughout the United States." It would permit any one interested in the corporation, avoiding direct corporate action, to obtain for the corporation that which it could not obtain by means of a general assignment or an application on its own behalf for a receiver. Such, indeed, was the attempt in the present case.

It is therefore concluded that the receiver was appointed on the ground of common-law insolvency, that such common-law insolvency was but a lesser phase of an actually existing bankruptcy insolvency, and that such an appointment was because of insolvency under the laws of a state within the meaning of section 3a (4) of the Bankruptcy Act, and that an act of bankruptcy was thereby committed. And the defendant, being now insolvent, must be, and is, adjudged a bankrupt.