**David T. DARBY, as Trustee in the Bankruptcy of Gerald W. Steincross, a Bankrupt, Plaintiff,**

v.

**SHAWNEE SOUTHWEST, INC., a corporation, Defendant.**

**Civ. No. 74–203–D.**

United States District Court,
W. D. Oklahoma,
Civil Division.

Feb. 3, 1975.

**588**

John W. Swinford, Oklahoma City, Okl., for plaintiff.

B. J. Brockett, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff is the trustee in bankruptcy of Gerald W. Steincross, a bankrupt. The Bankrupt was engaged in a business primarily involved in the sale of carpet. He had started in this business about September 1, 1972. The business was not financially successful and an Involuntary Petition in Bankruptcy was filed April 6, 1973. The Bankrupt prior to this time had abandoned the business and left for parts unknown. He was adjudicated a Bankrupt July 5, 1973 in Case Number BK–73–431 in this Court. Plaintiff initiated this action asserting that property of the Bankrupt which was subjected to an attachment lien by Defendant on February 19, 1973 in a prejudgment attachment in a State Court action constituted a null and void transfer pursuant to Section 67(a)(1)(a) of the Bankruptcy Act [11 U.S.C. § 107(a) (1)(a)]. The Defendant caused the property which had been attached to be sold on May 21, 1973 for the sum of $30,500.00 which is the amount sought in this action. Plaintiff asserts that Defendant's attachment lien was acquired within four months before the filing of the Bankruptcy Petition at which time the Bankrupt was insolvent. He further asserts that Defendant had knowledge of the Bankruptcy proceedings at the time of said sale. Defendant raises as its sole defense an assertion that the Bankrupt was not insolvent on February 19, 1973 when it acquired its attachment lien. The only other issue raised by the parties is the amount of expenses or costs purportedly incurred by Defendant in the attachment and sale in the State Court proceeding which should be deducted or credited in the event Plaintiff should prevail in the instant action. The matter was tried before the Court with the issues framed as stated above, the primary issue being whether the Bankrupt was insolvent on February 19, 1973, and the secondary issue being how much if any of the expenses or costs of the

attachment sale should be deducted from the proceeds in the event Plaintiff prevails.

The Plaintiff as Trustee was not able to obtain any books and records of the Bankrupt and his business. The testimony of the Bankrupt was not available, and the Trustee has never located the Bankrupt. The Trustee testified that he took possession of the Bankrupt's business premises and inventory shortly after the Involuntary Petition in Bankruptcy was filed and after being appointed Receiver. The inventory primarily consisted of rolls of carpet and also included a few household appliances. Plaintiff introduced into evidence an income statement of the Bankrupt for the year ending December 31, 1972. This statement showed a net loss of $32,364.04 for such period which apparently covered about four months. This statement noted a closing inventory of $154,344.11. It also disclosed the Bankrupt had no beginning inventory and made purchases for inventory totalling $183,948.27.

The testimony disclosed that several meetings with creditors or their attorneys were held by the Bankrupt and his then attorney on February 28, 1973 and during the first few days of March of said year. Defendant was represented at such meetings by its attorney. Its Dallas Regional Sales Manager was present for at least one of such meetings. The Bankrupt submitted a schedule of assets and liabilities to the creditors which is not dated but from which a letter to his creditors dated March 9, 1973 was prepared. This schedule showed his liabilities to be approximately $225,497.89 and his assets to be approximately $152,783.54 valued at his cost. In the letter of March 9, 1973, the Bankrupt through his attorney proposed a liquidation of his assets within a two month period in which it was expected that $125,000.00 could be realized. One facet of the proposal included the return of the inventory which had been attached by Defendant. Defendant's attorney was noted as a creditor's representative and

Defendant's Dallas Sales Manager was noted to have investigated and approved the party who was proposed to conduct the liquidation. The testimony showed that an insufficient number of the Bankrupt's creditors agreed to the proposed liquidation arrangement and such was not conducted. The Involuntary Petition in Bankruptcy was thereafter filed on April 6, 1973. The Defendant obtained a judgment against Bankrupt in the State Court action on April 13, 1973 and conducted an execution sale on May 21, 1973 selling the Bankrupt's inventory that it had attached on February 19, 1973.

The authority for Plaintiff's claim herein is found in 11 U.S.C. § 107(a)(1) which provides:

"Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent . . ."

Insolvency is defined in the Bankruptcy Act in 11 U.S.C. § 1(19) as follows:

"A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts."

In the instant case, the Defendant's attachment lien was obtained on February 19, 1973, which is within four months of the date the Petition in Bankruptcy was filed. It must be determined if the Bankrupt was insolvent on said date.

In the case of *Inter-State National Bank of Kansas City v. Luther*, 221

F.2d 382 (Tenth Cir. 1955) the appellate Court considered the proof required to show insolvency of a Bankrupt on a certain date. The Court noted the trustee had to prove same by a preponderance of the evidence. It was noted that the insolvency must be shown on a particular date, but evidence of the Bankrupt's financial condition on dates prior to and following the critical date is competent evidence especially when considered with evidence showing a continuing decline in the Bankrupt's condition.

In the instant case, the Bankrupt was only in business for about four months prior to the time the income statement was prepared indicating a substantial loss had been incurred. The attachment was made less than two months later. The schedule of assets and liabilities prepared by the Bankrupt and given to his creditors was made within approximately two weeks of the date of attachment if not sooner. A comparison of these documents shows that the Bankrupt's year-end inventory had a cost value of $154,344.11 while he estimated the cost value of his inventory to be $152,-783.54 at a time after Defendant had attached a large quantity of his inventory. The Trustee testified that the inventory he conducted about April 6, 1973 disclosed that a substantial quantity of the carpet purported to be in the Bankrupt's inventory in early March was not present. The Plaintiff testified that a diligent search was made to locate any assets of the Bankrupt other than the business inventory. This search included a review of various Court records and other official records. No assets of the Bankrupt were located in said search. The evidence disclosed that he drove a leased automobile and that the office furniture used in the business was leased. The business premises were leased also. The Plaintiff checked with various banks the Bankrupt was known to do business with and determined that on February 19, 1973, he had funds on deposit in two banks totalling $12,256.21. The preponderance of the evidence is

and the Court finds that on February 19, 1973, the Bankrupt's inventory of assets consisting mainly of carpet and some appliances had a cost value of $152,783.54. In addition, the Bankrupt was shown to have $12,256.21 in two bank accounts on said date.

The Plaintiff submitted a list of the claims submitted in the Bankruptcy proceeding. These totalled $182,345.21 and did not include the claim of Defendant in the amount of $25,462.08 which Defendant claimed to be due it in its State Court action. The evidence discloses that only a small portion of these claims may have arisen after February 19, 1973. It further disclosed that it is quite common for small creditors to elect not to file claims in Bankruptcy cases and if such is true in the present situation, these filed claims would not constitute all of the Bankrupt's liabilities. The Court considers the best evidence as to the Bankrupt's liabilities on February 19, 1973 to be the $225,497.89 figure submitted to the creditors in the meetings in late February or early March by the Bankrupt himself. In any event, the filed claims plus Defendant's claim amounts to $207,897.49.

It is the finding of the Court upon a consideration of the best evidence available under the circumstances involved herein, which satisfies the preponderance test, that on February 19, 1973, the Bankrupt's liabilities totalled $225,497.89 and his assets consisted of the $12,256.-21 cash in banks plus the inventory noted above with a cost value of $152,-783.54. It must now be determined what the "fair valuation" of this inventory of assets was in order to apply the statutory test as to whether the Bankrupt was insolvent on February 19, 1973.

In the case of *In re Schindler*, 223 F.Supp. 512 (E.D.Mo.1963) the Court stated:

"'Fair valuation' within the meaning of Sec. 1(19) of the Act, means a value that can be made promptly effective by the owner of property to pay

his debts. *Stern v. Paper*, D.C., 183 F. 228, 230 affirmed *Paper v. Stern*, 198 F. 642 (C.C.A.8th); *In re Sedalia Farmers' Co-Op Packing and Produce Company*, 268 F. 898, 900 (D.C.Mo.). The Court of Appeals for the Second Circuit citing *Stern v. Paper* with approval in *Syracuse Engineering Company v. Haight*, 110 F.2d 468, 471, concludes that under the 'balance sheet test' of the Bankruptcy Act, 'insolvency' results when the aggregate of a debtor's property is not sufficient at a fair valuation to pay his debts, which means a fair market price that can be made available for payment of debts within a reasonable period of time, and 'fair market value' implies a willing seller and a willing buyer."

In the case of *Inter-State National Bank of Kansas City v. Luther, supra*, the Court stated:

"It is true that book value does not necessarily prove fair market value, *Spreckels-Rosekrans Inv. Co. v. Lewis*, 9 Cir., 146 F.2d 982, . . . . But, book value is not inadmissible evidence of fair market value, 4A Remington § 1691 . . . ."

The parties generally agree that the business inventory consisting primarily of carpet cost the Bankrupt almost $153,000.00. Defendant presented an experienced carpet dealer who testified that the carpet involved was of good quality. He testified that the usual retail markup would range between 40% to 70%. He also stated that some dealers placed a markup of $2.00 per square yard on carpet they sold. On cross-examination, he testified that if another dealer were to purchase the entire inventory of a dealer, that the price would be less than the initial factory cost. His reason for such conclusion was that any dealer can purchase new carpet direct at such cost and would then purchase only those items which he thought his customers wanted and when the inventory of another dealer is purchased, it is doubtful if every item would satisfy the needs of the purchasing dealer. This witness also testified that a dealer with an inventory of about $150,000.00 should have sales of $500,000.00 per year or greater to support three or four turnovers a year.

Defendant contends that by adding the lowest of the suggested markup figures to the Bankrupt's inventory, that the value of same would be sufficient to pay his debts. Plaintiff asserts that the Bankrupt's financial statement showed that he only sold $29,000.00 worth of carpet in a four month period and such sales were at a 9% markup and that a substantial loss was incurred during such period. He contends that the Bankrupt's business record both as to markup and as to volume of sales does not support placing such a value on the inventory which would allow same to be sold within a reasonable time. Another matter which he urges should be considered is that the liquidation plan proposed by the Bankrupt to his creditors indicated a belief that in a two month period that $125,000.00 could be realized from the sale of his assets. In this regard, it is admitted that a "distressed" sale is not the proper test.

Considering the evidence before the Court, the most feasible method under which the Bankrupt's inventory could be sold and the proceeds made available for the payment of the Bankrupt's debts within a reasonable time would be in a sale to another dealer. The Bankrupt's performance in regard to sales from his business do not support Defendant's contention that his inventory could be sold at retail with a substantial markup and be accomplished within a reasonable time. The rationale expressed by Defendant's expert carpet dealer appears sound and the Court concludes that the proceeds from such a sale to other dealers would have to be less than the original cost to the Bankrupt. The Court finds that any attempted sale of the Bankrupt's inventory at a markup which would be required to meet his debts could not be accomplished within a reasonable period

of time. Moreover, overhead would eliminate any profit based on Defendant's operational experience.

■ The preponderance of the evidence is therefore that on February 19, 1973, the Bankrupt's liabilities exceeded $225,000.00 while his assets consisted of the cash in the bank of $12,256.21 and a business inventory with a fair market value of less than $153,000.00. Thus, the Bankrupt was insolvent on said date under the statutory balance sheet test. The attachment by Defendant of a portion of the Bankrupt's inventory on February 19, 1973 must be declared null and void pursuant to Section 67(a) of the Bankruptcy Act. Plaintiff is entitled to recover the proceeds of the attachment sale of May 21, 1973 in the amount of $30,500.00.

■ The Court must now determine what expenses, if any, of the attachment sale incurred by the Defendant may be deducted from the Trustee's recovery. Defendant has submitted a document entitled "Disbursement Sheet" which it contends sets out its expenses. This document appears to have been used by Defendant's attorney in determining how the proceeds received from the sale were divided between Defendant and its attorney after actual expenses incurred were deducted. Expenses for which Defendant seeks credit include the following:

| | |
|---|---:|
| Court Clerk's poundage | $ 200.00 |
| Storage and transfer costs | 2,285.48 |
| Publication costs | 17.00 |
| Appraiser's fee | 10.00 |
| Attachment bond premium | 600.00 |
| Attorney fees | 5,835.83 |

The Plaintiff contends, however, that only those expenses which he as Trustee would have normally and reasonably incurred in disposing of the attached carpet should be allowed. In this regard, he notes that the storage and transfer costs would not have been necessary since he had and retained possession of the Bankrupt's premises and further that an attachment bond would not have been required. To assist the Court the parties have entered into a stipulation of expenses incurred by Plaintiff in conducting the sale of such of the Bankrupt's inventory as was obtained and sold following his appointment as Receiver. The most significant direct expense was rent on the building. The Court finds that this expense would have been the same if the inventory attached by Defendant had been handled in the Bankruptcy proceeding. The Court further finds that the direct expenses incurred by Plaintiff in selling the Bankrupt's estate would not have varied significantly if the whole estate had been sold by him. The expenses claimed by Defendant wholly benefitted it in conducting a sale which this Court has determined was null and void in accordance with the Bankruptcy Laws and the benefit to the Plaintiff is minimal if it is in fact a benefit to the Plaintiff. Defendant contends that its attachment benefitted all the creditors by forcing the Bankrupt to attempt to satisfy his creditors and cease to operate a business which was losing money. This contention is without merit. It is the Court's finding that none of the expenses claimed by Defendant in effecting the attachment sale benefitted the Bankrupt's estate or benefitted the Plaintiff in disposing of same.

Judgment should be entered for the Plaintiff in the sum of $30,500.00 plus interest at 6% from February 19, 1973. Plaintiff is to prepare a Judgment for presentation to the Court and filing after the amount of Attorney fees are determined.