MERCHANTS RED BOOK COMPANY ET AL V. STATE OF TEXAS.

No. 7052. Decided February 22, 1939.
(125 S. W., 2d Series, 279.)

*John Davis,* of Dallas, and *George Mendell,* of Austin for appellants.

Appellant is not a commercial agency nor a commercial reporting credit agency, hence it does not come within the provisions of Article 7061. Appellants credit knowledge is not for sale to the general public, but is confined to bona fide members of the Retail Merchants Association of Dallas, who supply appellant with the credit information it possesses. City of Brookfield v. Kitchens, 163 Mo. 546, 63 S. W. 825; 40 C. J. 636; 29 Tex. Jur., 647.

A taxing statute will not be broadened by implication beyond the clear meaning of the language used. A statute that seeks to take money from the tax payer must be specific and to the point. Gould v. Gould, 245 U. S. 151, 38 Sup. Ct., 53, 62 L. Ed. 211; McCallum v. Associated Retail Credit Men of Austin, 26 S. W. (2d) 714; Spreckles Sugar Refining Co. v. McClain, 192 U. S. 397, 48 L. Ed. 496, 24 Sup. Ct. 376; Ernst v. Cohn, 62 S. W. 186.

*William McCraw,* Attorney General, and *John J. McKay,* Assistant Attorney General, for appellee.

The trial court was correct in holding that under the facts and the law appellants were operating a commercial agency and/or a commercial reporting credit agency within the meaning of Article 7061, R. S. 1925. Brown v. Durham, 42 S. W. (2d) 331; Fry v. McCord, 95 Tenn. 678, 33 S. W. 568; 29 Tex. Jur. 649.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted by the State of Texas against the Merchants Red Book Company, a corporation, and against J. E. R. Chilton, Sr., and J. E. R. Chilton, Jr., as former stockholders and successors of the corporation, which was dissolved in June, 1934. The purpose of the suit was to recover taxes alleged to be due from April, 1921, to June, 1934, under Article 7061 of the Revised Statutes of 1925, which article provides for taxes upon the gross receipts of certain businesses therein named. The basis of the State's suit is the contention that Merchants Red Book Company was a "commercial agency," or "commercial reporting credit agency," within the purview of said article.

The purpose clause named in the charter of said corporation was as follows:

"The purpose for which it is formed is the transaction of a printing or publishing business, particularly the publishing, for the use of subscribers only, subject to the limitations and restrictions of Anti-trust laws of Texas, of a directory of business information, known as the Red Book, and supplements thereto and revisions thereof, and the purchase and sale of such goods, wares and merchandise used for such business. "

It is understood that the real business of said corporation was not in fact "printing or publishing," but that the printing of what was known as the "Red Book" was merely incidental to the true business in which said corporation was engaged. In this connection see Zugalla v. International Mercantile Agency, 142 Fed. 927.

It does not appear whether the idea for the organization of said business originated with individuals, or with the retail merchants of the City of Dallas, for whose exclusive benefit it seems to be operated. Possibly the individual promoters originated the scheme, but it appears to have been adopted from the beginning by the merchants and business concerns of the City as the instrumentality through which they secured information for the conduct of their credit business and trade.

Briefly, it may be said that the real business of the Merchants Red Book Company, while a corporation, and by its successors operating under that name since its dissolution, was and is the assembling of facts concerning the credit rating and financial standing of purchasers and prospective customers of retail merchants and retail business concerns. Apparently the business is operated upon a mutual and reciprocal basis as between the Retail Merchants Association of the City of Dallas and the individuals who have actual charge of the oper-

ation of the business. The information concerning the credit standing of purchasers and customers is information which has been accumulated by various members of the Retail Merchants Association, and that which is being accumulated from time to time by them. This information has been furnished to the Merchants Red Book Company and constitutes in effect its "working capital." The information thus furnished is kept and made available by means of a system devised by the Merchants Red Book Company. Information concerning the various individual purchasers and customers is contained in the Red Book, which is published periodically. The rating of the individuals listed is disclosed by a code. The furnishing of this information by the members of the Retail Merchants Association to the Merchants Red Book Company is a part of the consideration moving from them for services rendered to them by the Merchants Red Book Company. The Red Book is furnished to members of the Retail Merchants Association, and to them only, upon what is designated a lease agreement. In addition to the information given in the Red Book the Merchants Red Book Company gives, upon request, reports to the subscribers. They make reports upon customers or consumers only. It appears that the Red Book is furnished to the subscriber upon the basis of a flat rate per annum, arrived at by an estimate of the probable needs of the particular subscriber, and this fixed sum entitles the subscriber to the use of the book and to a certain number of reports. For reports above the fixed number a charge is made. It appears that all charges for service are fixed by the Merchants Association, or at least they must approve them before they become effective. The stockholders of the Merchants Red Book Company while it was a corporation received no dividends on their stock. It appears that after all expenses of every kind for conducting the business are deducted, the net amount is retained by the Chiltons as managers of the system and is designated salaries, with an occasional amount allowed as a bonus. Except as to the amount paid to the Chiltons in the way of salaries there are no profits made by the Company.

What is now Article 7061 was originally enacted in 1907 and is as follows:

"Each individual, company, corporation or association, owning, operating, managing or controlling any collecting agency, commercial agency or commercial reporting credit agency within this State, and charging for collections made, or business done, or reports made, shall make quarterly, on the first days of January, April, July and October of each year, a re-

port to the Comptroller under oath of the individual or of the president, treasurer, or superintendent of such company, corporation or association, showing from business done within this State the gross amount received in the payment of charges for collections made and business done and reports made during the quarter next preceding. Such individual, companies, corporations or associations at the time of making said report shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date equal to one half of one per cent of said gross receipts as shown by said report."

A judgment for a considerable sum was awarded the State by the district court, from which an appeal was prosecuted. The Court of Civil Appeals at Amarillo has certified to the Supreme Court the following question:

"Is a person, firm or corporation engaged in the business of reporting for pay to retail merchants upon the credit of retail customers or individual consumers, liable for a gross receipts tax under Art. 7061, R. S. 1925?"

■ The question propounded must of course be interpreted in the light of the factual background. It is undisputed that the Merchants Red Book Company is a "reporting credit agency," but appellants strongly urge that it is not a "commercial" reporting credit agency, as that term was defined at the time of the original enactment of Article 7061. It appears with reasonable certainty that the terms "mercantile agencies" and "commercial agencies," being regarded as synonymous, have for a long time had a definite meaning. See 40 Corpus Juris, p. 636. In the case of City of Brookfield v. Kitchen, 63 S. W. 825, the Supreme Court of Missouri, speaking of "commercial or mercantile agencies," said:

"Such agencies are defined to be establishments which make a business of collecting information relating to the credit, character, responsibility, and reputation of *merchants* for the purpose of furnishing the information to subscribers,—e.g. R. G. Dun & Co. Agency, Bradstreet Company, etc. 5 Am. & Eng. Enc. Law (1st Ed.) p. 280; Web. Int. Dict."

Corpus Juris gives the following definition:

"A commercial or mercantile agency may be defined as a person, firm, or corporation engaged in the business of collecting information as to the financial standing, ability, and credit of persons engaged in *business,* and reporting the same to subscribers or customers applying and *paying* therefor." (Emphasis ours.)

Technically speaking, it may be that the Legislature in the original enactment of Article 7061 had in mind just such agencies. We are inclined to think, however, that the question should not be determined solely from the fact that in one instance the information furnished pertains to those engaged in business, while in the other it pertains only to customers or purchasers. It is altogether probable that a corporation or individual could engage in the business of collecting at their own expense information concerning the credit rating of individual purchasers and customers and sell this information to retail merchants, in the form of a red book or by reports, or both, and build up a large and profitable enterprise. Such a business would then undoubtedly take on the character of a "commercial" credit reporting agency, such as R. G. Dun & Co. and other similar agencies undoubtedly are. Obviously, such agencies come under the statute. We think, however, the situation here is distinctly different. This enterprise is undoubtedly so related to the conduct of the business of retail merchants as to really be an indispensable part of same, or an important incident thereto. If, for instance, the Retail Merchants Association of Dallas should choose to select a secretary to collect, preserve and systematize all of the information obtained by each of the members, and to furnish such information to the respective subscribers or participants in such enterprise, charge each a fee or contribution upon the basis of service furnished, which charges constituted a fund to defray expenses, including salary of the secretary, it could not be reasonably contended that such Association would come within the meaning of the law in question. We think the situation here is in practical effect the same thing. Although the Chiltons may have originally undertaken the establishment of this enterprise for the purpose of making gain, yet we think that the action of the Retail Merchants Association in conducting their credit affairs through the Chiltons, rather than through a secretary of their own choosing, making contributions of information, and in turn obtaining service upon a basis of charges fixed or approved by themselves, has not made the enterprise a "commercial" one. It is their method of setting up a clearing house of information concerning credit of proposed purchasers and customers, which is an essential factor in their business, and they no doubt are thus conducting their credit affairs as efficiently and at as low cost as they could be otherwise conducted. Disregarding technical rules of ownership, it may appropriately be said that this business is owned to as large extent by the subscribers as by the Chiltons. Its creation and

existence has been brought about by the cooperation of the merchants themselves. We do not think that the fact the Chiltons are paid rather substantially for their services makes this a "commercial" enterprise, in the sense of being one organized and operated for profit to those who are its sole promoters. It is more properly speaking a cooperative enterprise between the Merchants Association and those who act in the capacity of managers, and for this reason we do not think the Legislature intended to tax a business of this kind.

Applying the question to the peculiar situation here presented we answer it in the negative.

Opinion adopted by the Supreme Court February 22, 1939.